William E. OYLER, Plaintiff-Appellant,

v.

NATIONAL GUARD ASSOCIATION OF the UNITED STATES, et al., Defendants-Appellees.

No. 83–1529.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1984.

Decided Sept. 10, 1984.

Fairchild, Senior Circuit Judge, concurred and filed opinion.

Larry T. Frantz, Peoria, Ill., for plaintiff-appellant.

William R. Kohlhase, Davis & Morgan, Michael J. O'Leary, Asst. U.S. Atty., Peoria, Ill., Fredric D. Tannenbaum, Asst. Atty. Gen., Civil Appeals Div., Chicago, Ill., for defendants-appellees.

Before PELL and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

On March 2, 1977, the plaintiff, William E. Oyler, filed suit against the Insurance

Company of North America in the Circuit Court of Peoria County, Illinois, alleging that certain disability insurance benefits had been wrongly withheld. On April 5, 1979, Oyler amended his complaint, adding defendants Cole, Hamilton and Sandell, along with the National Guard Association of the United States and the National Guard Association of the United States Insurance Trust, alleging that all of the defendants had conspired to defraud him of insurance benefits. As defendants Cole and Hamilton were federal employees, on March 4, 1980, the case was removed to the United States District Court for the Central District of Illinois. On February 2, 1982, the defendants Cole and Hamilton filed a motion for summary judgment on the basis of official immunity, running of the statute of limitations, and laches. The defendant Sandell filed a similar motion on February 5, 1982. The district court granted both summary judgment motions and dismissed the complaints against the defendants Cole, Hamilton and Sandell, ruling that all three were immune from suit.

The plaintiff filed a motion for reconsideration of the summary judgment on February 8, 1983, which was denied on February 17, 1983. The plaintiff then filed a motion to alter or amend the judgment on February 28, 1983, which was also denied by the district court on March 15, 1983. On March 18, 1983, a notice of appeal was filed with this court. The district court's grant of summary judgment as to defendants Cole, Hamilton and Sandell is affirmed.

On March 4, 1980, plaintiff attempted service upon the National Guard Association of the United States Insurance Trust ("Trust") by personally serving Major General Francis S. Greenlief as a registered agent of the Trust. On March 5, 1980, the plaintiff attempted to serve the National

Guard Association of the United States ("Association") and/or the Trust by personally delivering a summons and complaint to the Secretary of a Lavern Weber, an agent for the Association. On March 24, 1980, the defendants Association and Trust filed an uncontested motion to dismiss. The district court granted the defendants' motion to dismiss on September 5, 1980.

To gain proper jurisdiction over the defendants Trust and Association, the plaintiff subsequently attempted to serve agents of the Trust and/or Association. Accordingly, on October 3, 1980 and on May 26, 1981, the plaintiff served defendants Edward R. Fry, Richard A. Miller, William J. McCadden, Francis S. Greenlief, Francis J. Higgins and Leo C. Goodrich by certified mail. On July 13, 1981, all of these defendants filed a motion to dismiss arguing that service by certified mail was not proper. The district court granted the motion to dismiss on July 28, 1981, insofar as service of process was quashed for such defendants. We affirm the district court's dismissal of the action as to the defendants Trust and Association.

The appellant essentially raises three main issues on appeal:

## I.

Were the defendants Trust and Association properly served making the district court's dismissal of the action as to those defendants inappropriate? [1]

## II.

Did the district court properly grant summary judgment to the defendants Cole and Hamilton on the basis of immunity? [2]

---

1. The defendant "Trust" refers to the National Guard Association of the United States Insurance Trust, and the defendant "Association" refers to the National Guard Association of the United States.

2. Defendants Cole and Hamilton additionally argue that the district court's grant of summary

judgment was proper based on the applicable statute of limitations and laches. Because we affirm the district court's grant of summary judgment as to these defendants on federal immunity grounds, we need not address the statute of limitation or laches issues.

### III.

Did the district court properly grant summary judgment to the defendant Sandell on the basis of immunity?

For the reasons herein stated, we affirm the district court's dismissal of the action as to the defendants Trust and Association as well as the district court's grant of summary judgment to defendants Cole, Hamilton and Sandell.

### FACTS

As indicated in the previous summary of the procedural history, the facts of this case are somewhat convoluted. On September 15, 1973, the plaintiff re-enlisted in the Illinois Air National Guard only to be honorably discharged one year and three months later on December 15, 1974. On that same day, the plaintiff enlisted in the Illinois Army National Guard and was appointed to the position of administrative supply technician, a federal National Guard technician working for the Illinois Army National Guard.

While serving in the Army National Guard the plaintiff's commanding officer was the defendant Ernest Sandell, a captain in the Illinois National Guard. It was part of Captain Sandell's duties to supervise the plaintiff in his work as an administrative supply technician. Captain Sandell's supervisor, defendant John F. Hamilton, a colonel in the Illinois National Guard and a federal National Guard technician, was likewise involved in supervising Oyler's activities. Defendant Jackie Cole, a colonel in the Illinois Army National Guard, a federal National Guard technician, was the technician personnel officer for the Illinois Army and Air National Guard having had the responsibility of administering personnel matters involving technician personnel such as the plaintiff. Because of their positions as federal National Guard technicians, both defendants Cole and Hamilton were federal employees under 32 U.S.C. § 709.

Defendants Sandell and Hamilton became dissatisfied with the plaintiff's work as an administrative supply technician shortly after his (Oyler's) appointment to that position. In April of 1975, during a counseling session with the plaintiff regarding his job performance, Oyler suggested that his resignation from his administrative supply technician position would be best for all concerned, and at that time he (Oyler) requested that the resignation papers be prepared.

On May 4, 1975, while the plaintiff was in the hospital, the defendants Sandell and Hamilton brought the resignation papers to him for his signature. The plaintiff signed the resignation papers, but requested that defendants Hamilton and Sandell withhold the processing of his resignation papers until he was discharged from the hospital. Although the plaintiff failed to advise either defendant Sandell or Hamilton when he was released from the hospital, he did call the technician personnel office to arrange for sick leave during his convalescence. At that time Oyler spoke with the defendant Cole wherein he confirmed his intention to resign from his position as a technician, but to remain in the Illinois National Guard.

Defendant Cole originally rejected the plaintiff's resignation when it was received in the technician personnel office on May 27, 1975, because it was not in plaintiff's handwriting, was not dated, and did not specify the effective date of or reason for resignation. The plaintiff thereupon submitted another resignation form which was received by the personnel office on June 3, 1975. On this form, the plaintiff stated in his own handwriting that his reason for resignation was "to seek other full time employment." The resignation was accomplished on June 3, 1975 with an effective date of May 30, 1975. The plaintiff was advised of his right to apply for a refund of his retirement contributions on June 3, 1975, and was informed that his pay deduction authorization for disability and other insurance coverages were canceled effective May 31, 1975. Furthermore, he was advised of the requirements necessary to convert and continue his insurance programs.

Almost a year later, during the month of April, 1976, the National Guard became aware that the plaintiff was seeking disability compensation. At that time, the plaintiff called the technician personnel office and requested information concerning Civil Service Disability Retirement and also requested and received the address of the National Guard Association Trust. The appropriate information and forms for applying for civil service disability retirement were mailed to him.

Sometime after April of 1976 but prior to June 9, 1976, the plaintiff filed a claim for disability benefits with the Insurance Company of North America. When the technician personnel office received the claim forms for processing on June 9, 1976, they were forwarded to the plaintiff for completion. The personnel office received Oyler's completed forms on June 29, 1976 and forwarded them to the Insurance Trust on July 24, 1976.

After having been unsuccessful in his efforts to recover disability benefits from the Insurance Trust, on March 2, 1977, the plaintiff filed suit against the Insurance Company of North America in the Circuit Court of Peoria County, Illinois. In his complaint, the plaintiff alleged that the Insurance Company of North America was improperly refusing to pay out the proceeds of the policy.[3] Note that the defendants Cole, Hamilton, or Sandell were not named in the original complaint, nor did that complaint allege any conspiracy.

On April 5, 1979, the plaintiff amended his complaint to allege a conspiracy among all of the defendants (including the defendants Trust, Association, Cole, Hamilton and Sandell) to defraud him of his benefits under the terms of his insurance policy with the Insurance Company of North America. In the amended complaint, the plaintiff alleged that the defendants Cole, Hamilton and Sandell procured the plaintiff's resignation of his administrative supply technician position by means of coercion, duress and pressure while the plaintiff was hospitalized and under medication; prevented the plaintiff's discharge from the National Guard knowing that he was ineligible for membership because of his physical condition; falsified plaintiff's military records to indicate that he was present at drills and other functions when he was not; forged plaintiff's military records to indicate his absence with permission from drills when no excused absence request was made by the plaintiff; and failed to process the plaintiff's mandatory discharge from the National Guard when they knew he should be discharged immediately. Additionally, in his answers to Cole's and Hamilton's interrogatories, the plaintiff alleged that the defendants Cole and Hamilton failed to process him for discharge from the Guard as required by Army regulations and failed to follow the procedures of the Federal Personnel Manual in forcing his resignation from the administrative supply technician position.

The defendants in their affidavits in support of their motion for summary judgment asserted that the actions taken by them with regard to the plaintiff were performed within the scope of their official duties and Sandell additionally averred essentially that he acted in good faith. The plaintiff failed to file a response in opposition to the motion for summary judgment and also failed to submit any affidavits contradicting the defendants' affidavits.

## SERVICE OF THE DEFENDANTS TRUST AND ASSOCIATION

Initially, we hold that the plaintiff's service on the respective defendants, the Trust

**3.** The Insurance Policy with the Insurance Company of North America provided in part:
"If a covered individual, while insured for coverage B is unable to meet the physical requirements necessary to retain his status as a Technician in the National Guard, and as a result thereof, he is separated from *both* his employment as a technician and ... his membership in The Army National Guard or Air National Guard, the company will pay."

(emphasis added).

The gist of plaintiff's allegations against Cole, Hamilton and Sandell is that by wrongfully preventing his discharge from the National Guard by not timely filing his discharge papers they thereby precluded him from recovering under the policy because permanent separation from membership in the National Guard was a condition precedent to collection.

and the Association, was defective since, as unincorporated associations, they were not subject to suit under a common name and thus were not subject to service under Federal Rule of Civil Procedure 4(d)(3). Thus, their dismissal from this action was proper. Under Federal Rule 4(d)(3), service may not be made upon an unincorporated association unless such an association "is subject to suit under a common name." It is clear that the defendant Association is an "unincorporated association" and we accept the defendant's argument that the defendant Trust is also an "unincorporated association" for the purpose of Federal Rule 4(d)(3).[4]

The defendants Trust and Association are not subject to suit under a common name as required by Federal Rule 4(d)(3). Federal Rule of Civil Procedure 17(b) delineates when a party has the capacity to sue or be sued:

"The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right under the Constitution or laws of the United States ...."

As it relates to this case, Federal Rule 17(b) provides that an unincorporated association has the capacity to be sued in its own name if such capacity is provided for under state law or if the action is based upon constitutional rights or the laws of the United States. Because the plaintiff has not sought relief under the laws of the United States or the Constitution (because his action sounds in state common law fraud), the 17(b)(1) exception is not applicable, and we must therefore determine whether the defendants Trust and Association have a right to sue or be sued under Illinois law.

■ It is well-settled under Illinois law that an unincorporated association may not sue or be sued in its own name for any remedy at law.[5] In *American Fed. of Tech. Eng., Local 144 v. La Jeunesse*, 63 Ill.2d 263, 347 N.E.2d 712 (1976), the court held that an unincorporated association is not a juridical person and therefore may not sue in its own name. Accordingly, the defendants Association and Trust, as unincorporated associations, may not sue or be sued in their own names. *See also City of Chicago v. Chicago Fire Fighters*, 99 Ill. App.3d 583, 54 Ill.Dec. 854, 425 N.E.2d 1071 (1981). Because both the Trust and Association are not subject to suit in their common names under Illinois law, such defendants could not be serviced under Rule 4(d)(3).

■ We also hold that service of the individual defendants, McCadden, Higgins, Fry, Miller, Greenlief and Goodrich, was properly quashed. When the plaintiff first amended his complaint to include allegations of conspiracy to defraud against Hamilton, Cole, Sandell, the Trust and Association, it attempted service on representatives of the Trust and Association; however, these were quashed by the district court, without protest from the plaintiff. The plaintiff then served the defendants listed above who were all trustees of the Trust and Association. He amended only the heading of his complaint to include

---

4. Note that the plaintiff admits in his brief to this court that both the defendant Association and the defendant Trust are unincorporated associations. Since this issue is not in dispute and there is no evidence in the record to the contrary, we have accepted this classification as correct for purposes of this opinion.

5. As pointed out at oral argument, effective January 1, 1984, voluntary unincorporated associations are subject to suit in Illinois. Ill.Rev.Stat. ch. 110, § 2–209.1 (1984). This change does not avail the plaintiff, however, since it was obviously not in effect at the time service was attempted on the defendants Trust and Association.

these same individuals, but the substance of the complaint, including the allegations concerning the conspiracy to defraud, still alleged that only Hamilton, Cole, Sandell, the Trust and Association were involved in the conspiracy to defraud. Further, there was no evidence submitted during the litigation leading to this appeal implicating any of these persons individually. We point out these facts only to show that the plaintiff obviously joined all of these defendants in their pleadings as representatives of the Trust and Association and failed to join them as individuals participating in the alleged conspiracy to defraud. Since we have held that the Association and Trust were not amenable to service and suit in Illinois at the time of this action, attempts to reach the till of these unincorporated associations through the "back door" by joining their representatives must also fail. Thus, we hold that it was proper for the district court to quash service of process against these defendants and dismiss them from the action.[6]

## IMMUNITY OF COLE AND HAMILTON

In claiming that the district court incorrectly granted summary judgment to the defendants Cole and Hamilton, the plaintiff initially argues that the actions complained of were beyond the outer perimeter of their official duties and therefore no immunity arises, and second, that under the qualified immunity test utilized by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), no purpose is served in granting lower echelon officials immunity from civil ac-

tions. We find neither of the plaintiff's arguments for reversal convincing.

With regard to the plaintiff's first argument, we do not understand how the allegedly wrongful actions on the part of the defendants Cole and Hamilton—failing to expeditiously process the plaintiff's discharge from the Illinois Army National Guard, failing to follow the procedures of the Federal Personnel Manual, failing to properly maintain the plaintiff's service record, and improperly obtaining and processing the plaintiff's resignation papers—could logically be found to be beyond the outer perimeter of their (Cole's and Hamilton's) official duties. As noted in the discussion of the facts, the essence of the plaintiff's complaint centers around the defendants' processing of military records or resignation papers, and the failure on the part of the defendants to properly discharge the plaintiff from Illinois Army National Guard. As supervisors of the plaintiff, it was the precise duty of the defendants Cole and Hamilton to oversee the resignation or discharge of the plaintiff. Allegations of the defendants' impropriety in carrying out such tasks are without question within the scope of their official duties. Moreover, in their uncontested affidavits the defendants state that they acted within the scope of their federal employment in their respective positions. Accordingly, we hold that any alleged actions on the part of the defendants Cole and Hamilton that form the basis of this suit were well within the outer perimeters of their official duties.

■ The plaintiff's second argument is that, at most, only a qualified or "good

---

**6.** Since the Trustees were served by mail, the National Guard Association of the United States Insurance Trust and the National Guard Association of the United States argue that the local district court "standing order on service" rule which provides, "[t]he Marshal may serve a summons or other civil process upon all persons within the purview of Rule 4(d)(1) and (3) of the Federal Rules of Civil Procedure by certified or registered mail" is inconsistent with Fed. R.Civ.P. 4(d)(1), which states that service shall be made "[u]pon an individual ... by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at

his dwelling house ...." Fed.R.Civ.P. 83 allows district courts to make their own rules governing the civil practice in their courts, so long as the local rules are "not inconsistent with these [Federal] rules." (Explanation added).

Because we held that the service upon the individual Trustees was properly quashed by the district court, we will not decide at this time whether this local rule is valid. However, we do harbor doubts as to the local rule's viability in light of Fed.R.Civ.P. 4(d)(1) which requires that service of the summons and complaint be made in person.

faith" immunity applies in this case under the Supreme Court's recent decision in *Harlow.* We disagree. As the complaint cannot fairly be read to allege the deprivation of rights arising out of the Constitution or any federal statute, but rather sounds in common law fraud, we hold that the defendants Cole and Hamilton possess absolute immunity from the plaintiff's claim since we have already determined that they were acting within the scope of their duties.

Although the plaintiff cites *Harlow* and *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), as evidence of the extent to which absolute immunity has eroded under present judicial scrutiny, we find those cases clearly distinguishable from the facts herein.[7] Both *Harlow* and *Butz* involved actions against public officials alleging violations of federal constitutional rights. Indeed, in the majority opinion in *Harlow,* Justice Powell specifically stated that in cases alleging violation of an individual's constitutional rights, it is the recognition that an action against a public official may be the only redress available to the plaintiff which has prompted a limitation on the traditional absolute immunity doctrine:

> "In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees.... It is this recognition that has required the denial of absolute immunity to most public officers."

*Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736 (citations omitted). This distinction was also recognized in *Butz* where the court stated, when discussing the absolute immunity provided in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), that:

> "Accepting this extension of immunity with respect to state tort claims, however, we are confident that *Barr* did not purport to protect an official who has not only committed a wrong under local law, but also violated those fundamental principles of fairness embodied in the Constitution."

*Butz,* 438 U.S. at 495, 98 S.Ct. at 2905 (footnote omitted).

Significantly, in this case, the plaintiff has not alleged that the defendant violated his constitutional or federal statutory rights. Because the present action finds its roots in common law, the absolute immunity doctrine enunciated by the Supreme Court in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), applies in this case.

In *Barr,* the Supreme Court determined that the protection of governmental officers from harassment founded upon vindictive or ill-founded damage suits outweigh the interest involved in the protection of the individual citizen against pecuniary damage caused by oppressive actions on the part of such officials. Accordingly, the Court held that absolute immunity applies to federal officials in cases involving common law actions. Our application of absolute immunity to the defendants in this case is undertaken with the same confidence expressed by the Supreme Court some twenty-five years ago:

> "It seems to us wholly chimerical to suggest that what hangs in the balance here is the maintenance of high standards of conduct among those in the public service. To be sure, as with any rule of law which attempts to reconcile fundamentally antagonistic social policies, there may be occasional instances of actual injustice which will go unredressed, but we think that price a necessary one to pay for the

---

7. Plaintiff has also cited *Lawrence v. Acree,* 665 F.2d 1319 (D.C.Cir.1981), in support of the proposition that the test of absolute immunity depends upon the particular conduct and circumstances giving rise to the claim of liability. It should be noted, however, that the action involved in *Lawrence* was based specifically upon a federal tort action provided for in 42 U.S.C.

§ 1985(1). Indeed, the court noted in a footnote that the established dichotomy between Constitutional and common law actions remains a valid one, and that the non-constitutional nature of the action involved is still relevant in determining whether absolute immunity exists. *Id.* at 1327 n. 12.

greater good. And there are of course other sanctions than civil tort suits available to deter the executive official who may be prone to exercise his functions in an unworthy and irresponsible manner."

*Id.* at 576, 79 S.Ct. at 1342. Although we recognize that one avenue of redress is being closed in applying the absolute immunity doctrine in cases based upon common law, we note that such immunity does not necessarily protect a public official where the act committed is an especially grievous one, because such conduct may very well be found to be beyond the outer perimeter of his or her official duties.

The plaintiff also emphasizes that the defendants Cole and Hamilton are only "lower echelon" officials with no "broad policy-making powers or authority" and thus should not come under the veil of absolute immunity protection in this action. This distinction was clearly rejected by the Supreme Court in *Barr:*

"The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive heirarchy.

"To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails. It is not the title of his office but the duties with which the particular officer sought

to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' *Spalding v. Vilas,* [161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896) ]—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits."

*Id.* 360 U.S. at 572–74, 79 S.Ct. at 1340–41 (footnote omitted). So also in this case, we do not find the rank of the public official to be the controlling mark. Rather, we recognize that the breadth of the immunity afforded depends on the scope of the duties entrusted to the official in question.

In this case, the record clearly reflects that defendants Cole and Hamilton were entrusted with the duty of supervision over the plaintiff; indeed it is just this supervision, or at least the plaintiff's allegation of their improper use of it, which is the basis of this lawsuit. Since the actions forming the basis of this lawsuit patently fall within the scope of the defendants' duties, the absolute immunity afforded by *Barr* clearly applies.

■ Our position that the qualified immunity recognized in *Harlow* and *Butz* applies only to actions alleging a violation of the plaintiff's statutory or constitutional rights underlies our holding that the traditional absolute immunity recognized by the Supreme Court in *Barr* continues to apply in actions grounded in common law, such as the present suit against the defendants Hamilton and Cole. Accordingly, we affirm the district court's grant of summary judgment for defendants Cole and Hamilton.[8]

## IMMUNITY OF SANDELL

The plaintiff argues, without citing authority, that even if immunity is extended

---

**8.** Assuming *arguendo* that only qualified immunity applied, we are confident the defendants would still be entitled to summary judgment based on their uncontested affidavits which demonstrate that they did not violate clearly

established statutory or constitutional rights of which a reasonable person would have known. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, for discussion of the qualified immunity test.

to Cole and Hamilton as federal officials, such immunity may not be applied to Sandell since, as the plaintiff asserts, "the record is devoid of any evidence giving the defendant such status." That summation is precisely the problem in determining Sandell's liability. The plaintiff stated in his complaint that Cole, Hamilton and Sandell were members of the United States National Guard. In their motion in support of their summary judgment, Cole and Hamilton pleaded that they were immune from liability because they were federal employees. Sandell's motion incorporated all of the arguments presented by Hamilton and Cole. The plaintiff, for what reasons we are unable to discern, failed to file a motion in opposition to the summary judgment motion; thus summary judgment was entered against the plaintiff in favor of all three defendants.

In this court's review of the record, in an attempt to solve the many questions left unanswered by the parties' briefs, it became apparent that the district court judge may have granted summary judgment for Sandell and the other defendants mistakenly believing each one of them to be federal employees. Ten months later, when the plaintiff belatedly filed affidavits in support of his motion to reconsider the district court's ruling, he failed to mention to the court that Sandell was not a federal employee. This is apparent from the district court's answer to plaintiff's motion where it stated that it would not reconsider the judgment since plaintiff had not introduced any new evidence that would change the "official immunity of federal officers in the performance of their duties." Although the plaintiff may not be exactly sure which governmental agency, state or federal, employed the defendant Sandell, the Attorney General of Illinois admits in its brief to this court that Sandell was in fact a state em-

ployee. It is from this point that we proceed.

Initially, it should be noted that this court has jurisdiction over this common law claim against a state employee since this action was removed from state court pursuant to 28 U.S.C. § 1442(a)(1), giving this court ancillary jurisdiction over the claim against Sandell. *See, e.g., IMFC Professional, Etc. v. Latin Am. Home Health,* 676 F.2d 152, 158–59 (5th Cir.1982). Since this is a common law action against a state official, this court is reluctant to accept Sandell's invitation to extend the absolute immunity rule of *Barr v. Matteo* to cover common law claims against state officials, especially where we have been unable to discover nor have we been presented with any case extending such immunity, while the state of Illinois in fact provides its own immunity standards for its state officials. Since the claim against Sandell rests upon the ancillary jurisdiction of this court, we refuse to expand the federal doctrine of immunity to cover Illinois state officials. Any other conclusion would obviously constitute an unwarranted interference by this court with the substantive law of Illinois.

■■■ The scope of immunity for state officials in Illinois is not as broad as it is for federal officials under the *Barr* decision. Illinois law provides two avenues of immunity. First, if the action is against the state or could subject the state to liability, then the suit is deemed to be one against the state wherein exclusive jurisdiction to hear the claim rests with the Illinois Court of Claims, Ill.Rev.Stat., ch. 37, § 439.8 (1982); *see e.g., Ritchey v. Maksin,* 49 Ill.App.3d 974, 7 Ill.Dec. 842, 365 N.E.2d 127 (1977).[9] Immunity is also provided for state officials who are being sued personally for discretionary acts taken within the scope of their duty. *See, e.g.,*

9. Sandell asserts that the Eleventh Amendment protects him from suit in federal court. The Eleventh Amendment would prevent this court from exercising jurisdiction if Sandell was a nominal party while the state of Illinois was the real party in interest. *See Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). This would occur if the state

would ultimately bear the responsibility for any financial burden imposed by an adverse verdict against Sandell. *See Miller-Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323, 327 (7th Cir.1972). However, we have been unable to discern any evidence in the record demonstrating that Illinois is the party ultimately responsible for any possible damage claim.

*Watson v. St. Annes Hospital,* 68 Ill. App.3d 1048, 25 Ill.Dec. 411, 386 N.E.2d 885 (1979).

■ However, we do not reach the immunity issue since a review of the record demonstrates that the evidence fails to substantiate any claim of conspiracy to defraud the plaintiff. The district court indirectly touched upon this issue when it stated that the defendants' actions were not beyond the scope of their authority or duties. It is within this court's power to examine the record and affirm the district court on other grounds when we determine that the grant of summary judgment was proper. *See e.g., Winter v. Local Union No. 639,* 569 F.2d 146, 151 (D.C.Cir.1977). While evidence in the record may reflect that the defendants may have been negligent in not timely filing the plaintiff's discharge papers, their actions or lack thereof fall far short of supporting a theory of conspiracy to defraud. The plaintiff, in his complaint and the affidavits submitted in his motion to reconsider summary judgment, attempts to establish that a conspiracy existed among all of the defendants to force him to resign and to defraud him of his benefits. The record, however, fails to support this conclusion.

The record discloses that the plaintiff's continued employment as an administrative supply technician was conditioned upon his performance during a six-month probationary period of employment. During this six-month period his supervisors noted, and a co-worker's affidavit produced by the plaintiff demonstrates, that he was having difficulty keeping up with his workload. The defendants claimed it was Oyler who

suggested that he resign. Oyler, however, alleged that his resignation was procured by coercion and duress while he was confined in the hospital in early May of 1975. The evidence discloses that a resignation form was signed by the plaintiff in the hospital; however, it was not processed, pursuant to the plaintiff's request, until his discharge from this hospital. It was after the plaintiff was discharged from the hospital that the form was reviewed for processing and found to be incomplete. On June 3, 1975, the Guard contacted him at his home and requested that he sign another form. He went to the National Guard auxiliary post and filled out and signed a second resignation form. The lack of any other evidence in the record supporting his theory of forced resignation along with the plaintiff's actions in signing a second resignation form demonstrate an absence of coercion and duress.

The plaintiff also apparently asserts that at the time of his resignation it was Sandell's and the other defendants' responsibility to discharge him since, as a result of his hospital stay, they knew he was suffering from arthritis and was unfit, and thus ineligible, to serve in the Guard as a reserve. Sandell, however, stated in his affidavit that the plaintiff expressed a desire to remain in the Guard as a reserve even though he would no longer be a full-time employee.[10] The plaintiff's actions support this contention. Even though his resignation from employment took effect on May 31, 1975, he was present at the June meeting and went so far as to request a leave of absence for the summer training seminar, which was subsequently denied.[11] How-

10. According to Sandell, Oyler requested that he be allowed to remain in the unit in order that he might retain his longevity for National Guard retirement purposes. This assertion is supported by a National Guard letter from its Washington office in fall of 1975 replying to Congressman Michel's inquiry on behalf of Mr. Oyler regarding whether one may be retained in the Guard despite a disability in order to accrue 20 years of military service for retirement purposes.

11. The plaintiff submitted three affidavits in support of his motion for reconsideration of the

summary judgment. After reviewing the affidavits, we agree with the district court that they add nothing new to the allegation of conspiracy to defraud. In an affidavit dated December of 1978 and submitted to the district court in 1983, a Mr. Freeman asserts that he was also an AST and that Sandell refused to consider Oyler's medical condition in denying Oyler's request for leave from the 1975 summer camp. Army correspondence between Sandell's superiors, however, shows that leave was not granted since it was the policy not to grant summer leaves if no

ever, since the defendants were aware of his medical condition and his continued pattern of absences from monthly meetings after the summer of 1975,[12] the plaintiff continues to argue that they were required at this point to process his discharge pursuant to Guard regulations and by not discharging him after his continued absences, the defendants intended to defraud him of the benefits. When the plaintiff requested the disability form for filing with the insurance company in the spring of 1976 it recited that, while he was no longer an employee, he was still a member of the Guard as he had not as of that time applied for a discharge. It was sometime after this period, in 1977, that the initial legal proceedings were commenced against the Insurance Company of North America to collect the benefits.[13] The record is barren of any evidence that the plaintiff contacted the Guard during this period to inform them that he desired a discharge for medical reasons. It is apparent that neither side took the initiative to process the appropriate paperwork. Although we do not reach the issue of immunity under Illinois law, we do note that if this was in fact the Guard's responsibility it might have conceivably constituted negligence on its part and the Illinois rules on immunity might not have protected Sandell from a possible negligence claim. *See, e.g., Watson v. St. Annes Hospital,* 68 Ill.App.3d 1048, 25 Ill. Dec. 411, 386 N.E.2d 885 (1979) (stating that in Illinois, immunity for state officials is not available where they negligently performed their ministerial duties). The record, however, falls far short of supporting the contention that a legal question exists as to whether the defendants conspired to defraud the plaintiff of his benefits.

■ The plaintiff pleaded and merely attempted to prove a conspiracy to defraud. We hold that the record demonstrates only vague allegations that fail to rise to the level required to withstand a motion for summary judgment when conspiracy to defraud is alleged. Thus, the district court's granting of the summary judgment motion was proper.[14]

FAIRCHILD, Senior Circuit Judge, concurring.

I concur in all respects except as to the quashing of service of process to the individual defendants McCadden, Higgins, Fry, Miller, Greenlief, and Goodrich. I agree that the trial court's order to quash should be upheld. However, I would do so on the basis that service by mail was ineffective. The local district court "standing order on service" purporting to authorize service by certified or registered mail was inconsistent with F.R.Civ.P. Rule 4(d)(1) which requires personal service and was therefore invalid.

---

alternative date was available and in 1975 no other dates were scheduled as a make-up period.

12. Another affidavit submitted by the plaintiff states that Sandell was in charge of all attendance records. The plaintiff asserts that since he did not request a medical excuse for missed meetings, his records were intentionally altered by defendants. However, in a letter from Sandell to Oyler dated December 1976, he advised Oyler that he was not aware of Oyler's excessive absences and he further requested that Oyler furnish him with evidence that he was unable to participate in monthly drills. If Oyler could not prove his disability, the letter requested that Oyler apply for a discharge. Shortly thereafter in early March, 1977, Sandell left his command post with the Guard.

13. It is interesting to note that in its initial suit against the insurance company, one of the issues was whether the plaintiff also had to be discharged from his reserve status in the Guard to qualify him to collect the benefits. It appears that only after this became apparent to the plaintiff under the provisions of the policy that litigation was commenced against Cole, Hamilton and Sandell alleging a conspiracy to defraud.

14. In his brief, Sandell also asserts that the military non-reviewability doctrine limits a court's review of the established relationship between enlisted military personnel and their superior officers. *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). We decline to consider defendant Sandell's military non-reviewability argument as we find that the evidence is insufficient to support a conspiracy to defraud claim.