Julius L. FINKELSTEIN,
Plaintiff–Appellee,

v.

Louis P. BERGNA,
Defendant–Appellant.

No. 87–2943.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1988.

Decided Aug. 2, 1989.

Craig M. Brown, San Jose, Cal., for defendant-appellant.

Alan B. Exelrod, San Francisco, Cal., for plaintiff-appellee.

Before FLETCHER and BEEZER, Circuit Judges, and KING,* District Judge.

BEEZER, Circuit Judge:

Julius Finkelstein brought suit against Louis Bergna in federal court under 42 U.S.C. § 1983 claiming violations of first and fourteenth amendment rights in addition to several pendent state law claims. Bergna moved for summary judgment on the ground that he was entitled to qualified immunity from suit on all claims. The district court denied Bergna's motion. Bergna appeals. We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We affirm.

In 1982 Julius Finkelstein was a deputy district attorney in Santa Clara County, California. Finkelstein worked for Louis Bergna, the elected District Attorney in Santa Clara County. Bergna did not run for reelection in 1982. Finkelstein and Leo Himmelsbach, another deputy district attorney, were running for Bergna's position. Bergna supported Himmelsbach's bid to succeed him in office. Finkelstein lost the election.

Shortly before the election, the press received information about Himmelsbach's allegedly improper conduct while a deputy district attorney in 1974. Bergna believed that Finkelstein was the source of the "leak" to the newspapers and that Finkelstein had retrieved the leaked information by making unauthorized entry into the office's confidential personnel files. Bergna suspended Finkelstein without providing him an opportunity to deny that he was responsible for the leak. Immediately thereafter, Bergna held a press conference announcing Finkelstein's suspension and implicating Finkelstein in the unauthorized entry into the personnel files and the subsequent leak to the press. Bergna's comments received widespread coverage in the newspapers. Finkelstein alleges that the suspension, and its announcement at a press conference, was intended to thwart his bid for office.

A subsequent report from the Attorney General's office stated that there was insufficient evidence to determine who leaked the information to the press. Further, due to lax record keeping in the office, it could not be determined whether the personnel files had been accessed in an unauthorized manner. Finkelstein challenged the propriety of the suspension in postsuspension hearings. He lost those challenges. Finkelstein was reinstated to his position and continues to work as a deputy prosecutor in Santa Clara County. This suit followed.

I

An official is entitled to qualified immunity when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Schwartzman v. Valenzuela,* 846 F.2d 1209, 1211 (9th Cir.1988). In order for an official to violate clearly established rights, the unlawfulness of the challenged conduct must be apparent in light of preexisting law. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Whether the law was clearly established is a question of law reviewed de novo. *Brady v. Gebbie,* 859 F.2d 1543, 1556 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

A

Bergna concedes that Finkelstein has a protected property interest in his job

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

under California law. Once a protected interest is found, the inquiry turns to what process is due. *Orloff v. Cleland,* 708 F.2d 372, 378–79 (9th Cir.1983).

Bergna contends that it was not clearly established in 1982 that a temporary suspension, as opposed to a discharge, could implicate the procedural protections of the due process clause. Bergna is incorrect. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (suspension of student implicated liberty and property interests requiring procedural due process); *Devine v. Cleland,* 616 F.2d 1080 (9th Cir. 1980) (suspension of VA educational benefits required presuspension process).

Bergna next contends that the postdeprivation process afforded Finkelstein was sufficient to meet the requirements of the due process clause. Bergna is again incorrect. Pursuant to the three-part test announced in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), we have consistently held that where predeprivation process is feasible, it must be afforded before a person may be deprived of a protected interest. *Sinaloa Lake Owners Ass'n. v. City of Simi Valley,* 864 F.2d 1475, 1481–83 (9th Cir.1989), *modified in unrelated part,* 882 F.2d 1398 (9th Cir.1989); *Merritt v. Mackey,* 827 F.2d 1368, 1372 (9th Cir.1987); *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 778 (9th Cir.1982).

The district court correctly concluded that Finkelstein alleged a violation of clearly established law and we accordingly affirm the denial of qualified immunity with regard to the property interest claim.

**B**

▇ Finkelstein also claims that his suspension deprived him of a liberty interest without due process of law. Bergna again contends that it was not clearly established that a temporary suspension could implicate a liberty interest. We disagree. *Goss,* 419 U.S. at 574–76, 95 S.Ct. at 736–37 (ten-day suspension implicated a liberty interest); *see also Click v. Board of Police Comm'rs,* 609 F.Supp. 1199, 1204 (W.D.Mo.

1985) (three-day suspension implicated a protected liberty interest).

In *Vanelli*—a discharge case—we stated that a liberty interest is "implicated if a charge impairs [one's] reputation for honesty or morality. The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment *or the alteration of some right or status recognized by state law.*" *Vanelli,* 667 F.2d at 777–78 (footnotes omitted and emphasis added). It is clear that Finkelstein's honesty and morality were impugned when Bergna intimated that he had gained access to confidential personnel files in an unauthorized, underhanded, and perhaps illegal manner. Finkelstein contested those publicly disclosed charges. He also alleges that his right to continued employment, a right or status conferred by state law, was altered by the suspension. Finkelstein thus alleges a cognizable liberty interest claim.

Bergna again argues that it was not clearly established that presuspension process is required when a liberty interest is at issue. He argues that the posttermination name-clearing hearing afforded to Finkelstein was alone sufficient to meet the requirements of due process. We have rejected that argument. *Vanelli,* 667 F.2d at 778 n. 8.

The district court correctly concluded that Finkelstein alleged a violation of clearly established law and we accordingly affirm the denial of qualified immunity on the liberty interest claim.

**C**

Bergna also contends that his suspension of Finkelstein was reasonable and authorized by state law, thereby entitling him to qualified immunity. This misconceives the question at issue. The question before us is not whether Bergna's actions were reasonable under state law, but whether the challenged conduct violates clearly established law, here the due process clause of the fourteenth amendment. It is for the jury to decide whether Bergna's conduct

was reasonable in light of clearly established law. *Brady,* 859 F.2d at 1556; *Thorsted v. Kelly,* 858 F.2d 571, 575–76 (9th Cir.1988).

### D

Bergna moved for summary judgment on the pendent state law claims and argued that *Harlow* immunity analysis should be applied to those claims. The district court rejected this argument. We agree with the district court and find this argument meritless for the reason stated by the Seventh Circuit. *Oyler v. National Guard Ass'n of United States,* 743 F.2d 545, 554 (7th Cir.1984) (rejecting this argument as it would "obviously constitute an unwarranted interference by this court with the substantive law of [a state].").

### II

■ The district court concluded that Bergna was not entitled to qualified immunity on the first amendment claim because the law was clearly established that assistant prosecutors may not be disciplined solely for exercising their first amendment rights. We agree.

We agree with the Seventh Circuit that disciplinary action discouraging a particular candidate's bid for elective office "represent[s] punishment by the state based on the content of a communicative act" which is protected by the first amendment. *Newcomb v. Brennan,* 558 F.2d 825, 828–29 (7th Cir.1977). Finkelstein's allegation that he was disciplined in order to hinder his candidacy thus brings his claim within the protection of the first amendment.

■ In general, a public employee may not be disciplined solely for exercising first amendment rights relating to matters of public concern. Determining whether an employee's first amendment rights have been violated requires a balancing of the nature and context of the employee's speech against the governmental employer's interest in an orderly and efficient workplace. *See, e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City School District*

*Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Roth v. Veteran's Administration,* 856 F.2d 1401, 1404–08 (9th Cir.1988). *Cf. Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)(plurality opinion) (indicating that patronage dismissals of public employees in policymaking positions would not violate the first amendment).

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court held that assistant public defenders could not be discharged from office solely because of their political affiliation. *Id.* at 519–20, 100 S.Ct. at 1295–96. The Court rejected a claim that *Elrod v. Burns* justified discharging public defenders because they were policymaking officials who could be discharged based upon political affiliation. *Branti,* 445 U.S. at 517–20, 100 S.Ct. at 1294–96. The Court distinguished public defenders from other governmental officials on the ground that the responsibility of public defenders was to represent "individual citizens in controversy with the State." *Id.* at 519, 100 S.Ct. at 1295. In a footnote following the above quotation, the Court stated:

> This is in contrast to the broader public responsibilities of an official such as a prosecutor. We express no opinion as to whether the deputy of such an official could be dismissed on grounds of political party affiliation or loyalty. Cf. *Newcomb v. Brennan,* 558 F.2d 825 (CA7 1977), cert. denied, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (dismissal of deputy city attorney).

*Id.* at 519 n. 13, 100 S.Ct. at 1295 n. 13.

However, only three terms after the Supreme Court decided *Branti,* the Court considered a first amendment challenge to the discharge of an assistant prosecutor. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Sheila Myers was an Assistant District Attorney in New Orleans. She was dischargeable at-will by her employer, Harry Connick, the District Attorney for Orleans Parish, Louisiana. Myers and Connick were in sharp conflict

over Myers' job duties. Myers had distributed a questionnaire to her fellow assistant prosecutors addressing matters concerning Connick's managment of the prosecutor's office. Connick fired Myers for refusing to accept a change in her job duties and told her that he considered her distribution of the questionnaire an act of insubordination. Myers sued Connick under 42 U.S.C. § 1983, contending that her discharge violated her first amendment rights.

The Supreme Court held that the majority of the questions in the questionnaire were merely managerial "housekeeping" questions which did not address matters of public concern and consequently did not implicate the protections of the first amendment. *Id.* at 144–49, 103 S.Ct. at 1688–91. The Court did, however, conclude that a single question in the questionnaire which inquired if assistant district attorneys "ever feel pressured to work in political campaigns on behalf of office supported candidates" did implicate matters of public concern and required first amendment scrutiny. *Id.* at 149, 103 S.Ct. at 1691. The Court ultimately concluded that Connick was justified in firing Myers notwithstanding its finding that Myers had engaged in protected speech. *Id.* at 150–54, 103 S.Ct. at 1691–94.

From *Connick* we draw two important points. First, Myers' position as an assistant prosecutor was unimportant to the Court's straightforward application of the general rule prohibiting discharge of public employees solely for exercising first amendment rights. Second, the Court made no reference to footnote 13 in *Branti v. Finkel.* We thus conclude that there is no bar to Finkelstein's first amendment claim due solely to his status as an assistant prosecutor. *Connick* precludes such a conclusion. *See also Giacalone v. Abrams,* 850 F.2d 79 (2nd Cir.1988)(applying traditional balancing of interests in § 1983 claim brought by a prosecutor for violation of first amendment rights).

A number of circuit courts have confronted the scope of an assistant prosecutor's first amendment right not to be discharged on grounds of political affiliation or loyalty and have concluded that they may be discharged for virtually any reason without implicating first amendment concerns. *Clark v. Brown,* 861 F.2d 66, 68 (4th Cir.1988); *Livas v. Petka,* 711 F.2d 798, 800–01 (7th Cir.1983); *Mummau v. Ranck,* 687 F.2d 9, 10 (3d Cir.1982); *Newcomb,* 558 F.2d at 829–31. To the extent that these cases state either that assistant prosecutors may not bring suit for violations of the first amendment arising in the employment context or that it is not clearly established that assistant prosecutors may vindicate first amendment rights in an employment context, we respectfully disagree in light of *Connick. Cf. Clark,* 861 F.2d at 68 (not clearly established, no discussion of *Connick* ); *Livas,* 711 F.2d at 800–01 (decided shortly after and without reference to *Connick* and holding that assistant prosecutors are policymaking officials not protected by the first amendment); *Mummau,* 687 F.2d at 10 (pre-*Connick* ); *Newcomb,* 558 F.2d at 829–31 (pre-*Connick* ).[1]

Bergna argues, however, that it was not clearly established that suspensions could implicate first amendment concerns. Bergna is incorrect. It was clearly established at the time of Finkelstein's suspension that disciplinary suspensions based upon proper exercise of first amendment rights may give rise to § 1983 liability. *See Peacock v. Duval,* 694 F.2d 644, 645 (9th Cir. 1982)(suspension and discharge case); *Porter v. Califano,* 592 F.2d 770, 771 (5th Cir.1979)(thirty-day suspension implicated first amendment rights).

Finkelstein has alleged that Bergna suspended him in retaliation for opposing Bergna's chosen successor for the elected position of District Attorney of Santa Clara County. Candidacy for office is of great public importance and the free and spirited clash of opinions in the pursuit of public office is to be expected and encouraged.

---

**1.** These cases largely turned on determinations that assistant prosecutors are policymaking officials not subject to the general rule that public employees may not be disciplined solely for speaking about matters of public concern. Bergna has not argued that Finkelstein held a policymaking position.

Bergna was well within his rights in supporting a candidate other than Finkelstein. What Bergna could not do without some strong governmental justification, not present on the record in this appeal, was to use his position as District Attorney to hinder Finkelstein's candidacy by suspending him from his job. *Connick,* 461 U.S. at 152, 103 S.Ct. at 1692–93. We conclude that Finkelstein's first amendment interests greatly outweigh any governmental interests [2] asserted in this appeal and that it would be apparent that a public employer's retaliation against a candidate for office because the employer supports another candidate violates clearly established law.[3] *See Roth,* 856 F.2d at 1408 (distilling the relevant balancing tests in public employee discharge cases and specifically declining to adopt a cramped view of what constitutes clearly established law in cases in which the courts must engage in fact-specific balancing of competing interests). Accordingly, Bergna's motion for summary judgment on the first amendment claim was properly denied.

AFFIRMED.

---

2. Indeed, if we assume (as we must, viewing the evidence in the light most favorable to Finkelstein) that Bergna's actions were motivated by political considerations, there is no evidence in the record of a counterbalancing governmental interest supporting the suspension. *Cf. Roth,* 856 F.2d at 1408 (noting the existence of underlying factual issues with respect to the extent of office disruption caused by Roth's first amendment activities). Moreover, Bergna's claim that the suspension was somehow justified by his own first amendment right to comment on Finkelstein's qualifications is without merit. Bergna's use of his official authority as District Attorney to discipline Finkelstein may be justified only by governmental interests in effective functioning of the District Attorney's office, not by Bergna's interests as a private citizen.

3. In fact, Bergna's brief virtually concedes this point as his claim of qualified immunity is focused on the erroneous argument that suspensions do not implicate first amendment concerns.