Julius L. **FINKELSTEIN,**
Plaintiff–Appellee,

v.

Louis P. **BERGNA,**
Defendant–Appellant.

No. 87–2943.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1988.

Decided Aug. 2, 1989.

Opinion Withdrawn Jan. 29, 1991.

Opinion Filed Jan. 29, 1991.

Craig M. Brown, San Jose, Cal., for defendant-appellant.

Alan B. Exelrod, San Francisco, Cal., for plaintiff-appellee.

Before FLETCHER and BEEZER, Circuit Judges, and KING,* District Judge.

BEEZER, Circuit Judge:

The petition for rehearing is granted. The opinion filed August 2, 1989, and published at 881 F.2d 702, is withdrawn. The suggestion for rehearing en banc is dismissed as moot.

## OPINION

Julius Finkelstein brought suit against Louis Bergna in federal court under 42 U.S.C. § 1983 claiming violations of first and fourteenth amendment rights in addition to several pendent state law claims. Bergna moved for summary judgment on the ground that he was entitled to qualified immunity from suit on all claims. The district court denied Bergna's motion. Bergna appeals. We have jurisdiction over

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

this interlocutory appeal under 28 U.S.C. § 1291. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We reverse the district court's denial of summary judgment on the first amendment claim and affirm in all other respects.

In 1982 Julius Finkelstein was a deputy district attorney in Santa Clara County, California. Finkelstein worked for Louis Bergna, the elected District Attorney in Santa Clara County. Bergna did not run for reelection in 1982. Finkelstein and Leo Himmelsbach, another deputy district attorney, were running for Bergna's position. Bergna supported Himmelsbach's bid to succeed him in office. Finkelstein lost the election.

Shortly before the election, the press received information about Himmelsbach's allegedly improper conduct while a deputy district attorney in 1974. Bergna believed that Finkelstein was the source of the "leak" to the newspapers and that Finkelstein had retrieved the leaked information by making unauthorized entry into the office's confidential personnel files. Bergna suspended Finkelstein without providing him an opportunity to deny that he was responsible for the leak. Immediately thereafter, Bergna held a press conference announcing Finkelstein's suspension and implicating Finkelstein in the unauthorized entry into the personnel files and the subsequent leak to the press. Bergna's comments received widespread coverage in the newspapers. Finkelstein alleges that the suspension, and its announcement at a press conference, were intended to thwart his bid for office.

A subsequent report from the Attorney General's office stated that there was insufficient evidence to determine who leaked the information to the press. Further, due to lax record keeping in the office, it could not be determined whether access to the personnel files had been accomplished in an unauthorized manner. Finkelstein challenged the propriety of the suspension in postsuspension hearings. He lost those challenges. Finkelstein was reinstated to his position and continues to work as a deputy prosecutor in Santa Clara County. This suit followed.

**I**

■ An official is entitled to qualified immunity when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Schwartzman v. Valenzuela,* 846 F.2d 1209, 1211 (9th Cir.1988). In order for an official to violate clearly established rights, the unlawfulness of the challenged conduct must be apparent in light of preexisting law. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Whether the law was clearly established is a question of law reviewed de novo. *Brady v. Gebbie,* 859 F.2d 1543, 1556 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

**A**

Bergna concedes that Finkelstein has a protected property interest in his job under California law. Once a protected interest is found, the inquiry turns to what process is due. *Orloff v. Cleland,* 708 F.2d 372, 378–79 (9th Cir.1983).

■ Bergna contends that it was not clearly established in 1982 that a temporary suspension, as opposed to a discharge, could implicate the procedural protections of the due process clause. Bergna is incorrect. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (suspension of student implicated liberty and property interests requiring procedural due process); *Devine v. Cleland,* 616 F.2d 1080 (9th Cir.1980) (suspension of VA educational benefits required presuspension process).

■ Bergna next contends that the post-deprivation process afforded Finkelstein was sufficient to meet the requirements of the due process clause. Bergna is again incorrect. Pursuant to the three-part test announced in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976), we have consistently held that where predeprivation process is feasible, it must be afforded before a person may be deprived of a protected interest. *Sinaloa Lake Owners Ass'n. v. City of Simi Valley*, 864 F.2d 1475, 1481–83 (9th Cir.), *modified in unrelated part*, 882 F.2d 1398 (9th Cir.1989); *Merritt v. Mackey*, 827 F.2d 1368, 1372 (9th Cir.1987); *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773, 778 (9th Cir.1982).

The district court correctly concluded that Finkelstein alleged a violation of clearly established law and we accordingly affirm the denial of qualified immunity with regard to the property interest claim.

### B

■■ Finkelstein also claims that his suspension deprived him of a liberty interest without due process of law. Bergna again contends that it was not clearly established that a temporary suspension could implicate a liberty interest. We disagree. *Goss*, 419 U.S. at 574–76, 95 S.Ct. at 736–37 (ten-day suspension implicated a liberty interest); *see also Click v. Board of Police Comm'rs*, 609 F.Supp. 1199, 1204 (W.D.Mo. 1985) (three-day suspension implicated a protected liberty interest).

In *Vanelli*—a discharge case—we stated that a liberty interest is "implicated if a charge impairs [one's] reputation for honesty or morality. The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment *or the alteration of some right or status recognized by state law*." *Vanelli*, 667 F.2d at 777–78 (footnotes omitted and emphasis added). It is clear that Finkelstein's honesty and morality were impugned when Bergna intimated that he had gained access to confidential personnel files in an unauthorized, underhanded, and perhaps illegal manner. Finkelstein contested those publicly disclosed charges. He also alleges that his right to continued employment, a right or status conferred by state law, was altered by the suspension. Finkelstein thus alleges a cognizable liberty interest claim.

Bergna again argues that it was not clearly established that presuspension process is required when a liberty interest is at issue. He argues that the post-termination name-clearing hearing afforded to Finkelstein was alone sufficient to meet the requirements of due process. We have rejected that argument. *Vanelli*, 667 F.2d at 778 n. 8.

The district court correctly concluded that Finkelstein alleged a violation of clearly established law and we accordingly affirm the denial of qualified immunity on the liberty interest claim.

### C

Bergna also contends that his suspension of Finkelstein was reasonable and authorized by state law, thereby entitling him to qualified immunity. This misconceives the question at issue. The question before us is not whether Bergna's actions were reasonable under state law, but whether the challenged conduct violates clearly established federal law, here the due process clause of the fourteenth amendment. It is for the jury to decide whether Bergna's conduct was reasonable. *Brady*, 859 F.2d at 1556; *Thorsted v. Kelly*, 858 F.2d 571, 575–76 (9th Cir.1988).

### D

Bergna moved for summary judgment on the pendent state law claims and argued that *Harlow* immunity analysis should be applied to those claims. The district court rejected this argument. We agree with the district court and find this argument meritless for the reason stated by the Seventh Circuit. *Oyler v. National Guard Ass'n of United States*, 743 F.2d 545, 554 (7th Cir.1984) (rejecting this argument as it would "obviously constitute an unwarranted interference by this court with the substantive law of [a state].").

### II

■■ The district court also concluded that Bergna was not entitled to qualified

immunity on the first amendment claim. Because the law was not clearly established in 1982, we reverse.

It was clearly established by 1982 that public employees could not be disciplined solely for exercising first amendment rights. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Disciplinary action discouraging a candidate's bid for elective office "represent[ed] punishment by the state based on the content of a communicative act" protected by the first amendment. *Newcomb v. Brennan,* 558 F.2d 825, 828–29 (7th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977). It was also clearly established that suspensions could implicate first amendment rights. *See Peacock v. Duval,* 694 F.2d 644, 645 (9th Cir.1982) (suspension and discharge case); *Porter v. Califano,* 592 F.2d 770, 776 (5th Cir.1979) (thirty-day suspension implicated first amendment rights).

Nevertheless, it was not clearly established in 1982 that *prosecutors* were protected by the first amendment from such disciplinary action. In *Elrod v. Burns,* 427 U.S. 347, 367, 372, 96 S.Ct. 2673, 2686, 2689, 49 L.Ed.2d 547 (1976) (plurality opinion), the Supreme Court had recognized an exception to the general rule for public employees in policymaking positions. Several courts applied the *Elrod* exception to assistant prosecutors. *See Mummau v. Ranck,* 687 F.2d 9, 10 (3d Cir.1982) (per curiam); *Newcomb,* 558 F.2d at 829–31. The Supreme Court, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), held that the *Elrod* exception did not extend to assistant public defenders. But in a footnote, the Court stated:

This is in contrast to the broader public responsibilities of an official such as a prosecutor. We express no opinion as to whether the deputy of such an official could be dismissed on grounds of political party affiliation or loyalty.

*Id.* at 519 n. 13, 100 S.Ct. at 1295 n. 13 (citing *Newcomb* ).

*Newcomb* is particularly on point to our analysis here. In *Newcomb,* a deputy city attorney told his superior that he intended to run for Congress. His superior threatened to fire him if he ran; Newcomb ran anyway and was discharged. The court upheld this blatantly political firing, concluding that Newcomb's first amendment concerns were overridden by the city attorney's need for absolute loyalty. *Newcomb,* 558 F.2d at 829–31. The court in *Mummau* echoed the same rationale.

*Newcomb* and *Mummau* turned largely on determinations that assistant prosecutors were policymaking officials, thus virtually at-will employees. The *Newcomb* court specifically recognized, in dicta, that a person with civil service status might be in a different and more protected position than a political appointee. 558 F.2d at 830. However, this distinction was not sufficiently clear from the case law in 1982 to deny a reasonable official in Bergna's position qualified immunity from Finkelstein's first amendment claim.

■ We cannot conclude, in light of pre-existing law, that the unlawfulness of Bergna's conduct was clearly established in 1982. *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. We hasten to add, however, that we reject the proposition that prosecutors have unfettered discretion to discipline assistant prosecutors for exercising their first amendment rights. Shortly after the Supreme Court decided *Branti,* it considered a first amendment challenge to the discharge of an assistant prosecutor. In *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Court concluded that Myers, an assistant prosecutor, had engaged in protected speech. *Id.* at 150–54, 103 S.Ct. at 1691–94. Even though it ultimately concluded that she could be discharged for other reasons, the Court made no reference to footnote 13 in *Branti* ; Myers' position as an assistant prosecutor was unimportant to the Court's straightforward application of the general rule prohibiting discharge of public employees solely for exercising first amendment rights. *See also Giacalone v. Abrams,* 850 F.2d 79 (2nd Cir.1988) (applying traditional

balancing of interests in § 1983 claim brought by a prosecutor for violation of first amendment rights).

## III

For the foregoing reasons, we affirm the district court's denial of Bergna's motion for summary judgment on all but the first amendment claims. The district court's denial of Bergna's motion for summary judgment on the first amendment claim is reversed and summary judgment shall be entered against Finkelstein on that claim. All other claims may proceed to trial. Accordingly, each party shall bear their own costs. The decision of the district court is

AFFIRMED IN PART and REVERSED IN PART.

FLETCHER, Circuit Judge, concurring in part and dissenting in part:

I think the panel errs in granting rehearing.[1] Much of the revised opinion is sound but I must respectfully dissent from the reversal in Part II of the denial of summary judgment on the basis that Bergna was entitled to qualified immunity on Finkelstein's first amendment claim. First, the law was clear that a deputy prosecutor's first amendment rights could not be infringed by disciplinary action. At the time of Finkelstein's suspension, the law clearly prohibited Bergna's action. Second, I must say I am at a loss to understand how the majority can agree that the law was clear that Finkelstein as a deputy prosecutor had a protected property interest in his job that would preclude his discipline without a pre-deprivation hearing but that the law was not clear that his job was of such a nature that his boss could not infringe his first

amendment rights by suspending him without such a hearing.

### I. *Finkelstein's Property Interest in His Employment*

In the due process analysis in the majority opinion in Part I, we note that "Bergna concedes that Finkelstein has a property interest in his job under California law." *See supra* at 1451. Not only California, Cal.Lab.Code §§ 1101–1102 (West 1989),[2] but Santa Clara County, Finkelstein's employer, specifically grants Finkelstein as deputy district attorney a property interest in his employment. As a civil service employee, Finkelstein did *not* serve at the pleasure of the elected District Attorney, Bergna, and could be disciplined only for cause. He could not be disciplined for political beliefs.

Article VII of the Santa Clara County Charter and Code in force in 1982 governed the county's personnel matters. Section 700 laid the ground rules:

The personnel system of the county shall be based on merit and equal opportunity.

Appointments and promotions in the administrative service of the county shall be made in conformance with merit system rules and all applicable law, including that pertaining to the effectuation of equal employment opportunities and affirmative action programs.

No person employed or seeking employment with the county shall be unlawfully discriminated against because of age, color, creed, national origin, political opinions, race, religion, sex, or union activity.

These rules govern the county's employment actions, including disciplinary action,

---

1. I would amend the original opinion to rely on other support than *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), but the result should remain the same and the essential reasoning is sound.

2. Section 1101 reads:
    No employer shall make, adopt, or enforce any rule, regulation, or policy:
    (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.

(b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees.
Section 1102 reads:
    No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.

involving classified employees, but not un-classified employees. Section 701 lists *"the"* district attorney as an unclassified position. Santa Clara County Charter & Code § 701(a)(1) (1976) ("All elective county officers"). However, deputy district attor-neys are classified employees. *Id.* § 701(b) ("The classified service shall comprise all positions not specifically included by this article in the unclassified service.").

Finkelstein alleges in paragraph 1 of his second amended complaint that as deputy district attorney he was a permanent Santa Clara County employee in the classified service. Bergna admits this allegation in his answer and has agreed that Finkelstein has a property interest in his job.

## II. *Disciplinary Action*

Bergna is not entitled to qualified immu-nity if the "contours" of Finkelstein's first amendment right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "[I]n the light of pre-existing law the un-lawfulness must be apparent." *Id.*

As the majority states, it was clearly established that Bergna could not discipline Finkelstein, as a public employee, solely for exercising his first amendment rights on matters of public concern. *See Mt. Healthy City School Dist. Bd. of Edu-cation v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The majority also correctly asserts that suspensions are not exempt from this rule and that the first amendment protection extends to "discipli-nary action discouraging a particular candi-date's bid for elective office." *See supra* at 1453.

I part ways with the majority where it concludes that the law was not clearly es-tablished in 1982 that the first amendment protected a deputy prosecutor, particularly one who was protected from disciplinary action for his political opinions by the coun-ty's own rules. The majority seems to interpret the case law as excluding prose-cutors as a class from the general rule that public employees cannot be disciplined for exercising their first amendment rights. That interpretation is unjustified. The cru-cial issue is not what broad job category the employee falls into; it is what role the employee plays as defined by the public employer.

For Bergna to be exempt from liability, his discipline of Finkelstein "must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit to be gained must outweigh the loss of constitutionally protected rights." *Elrod v. Burns,* 427 U.S. 347, 363, 96 S.Ct. 2673, 2685, 49 L.Ed.2d 547 (1976) (plurality opinion). The burden rests on the public employer to prove that the employee holds a policy-making position that restricts his right to speak out on a particular matter. *Id.* at 368, 96 S.Ct. at 2687. The *Elrod* plurality cited "the need for political loyal-ty ... to the end that representative government not be undercut by tactics ob-structing the implementation of policies of the new administration, policies presum-ably sanctioned by the electorate." *Id.* at 367, 96 S.Ct. at 2687. It concluded that limiting discipline "to policymaking posi-tions is sufficient to achieve this govern-mental end." *Id.* Justices Stewart and Blackmun agreed with the plurality on this point, concluding that "a nonpolicymaking, nonconfidential government employee [can-not] be discharged or threatened with dis-charge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).

The *Elrod* plurality addressed the defin-ing characteristics of a policymaking em-ployee. "The nature of the responsibilities is critical.... An employee with responsi-bilities that are not well defined or are of broad scope more likely functions in a poli-cymaking position.... [C]onsideration should also be given to whether the em-ployee acts as an adviser or formulates plans for the implementation of broad goals." *Id.* at 367–68, 96 S.Ct. at 2687. In *Branti v. Finkel,* 445 U.S. 507, 518, 100

S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980), the Court further clarified, contrary to the majority's position, that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation [or political belief] is an appropriate requirement for the effective performance of the public office involved."

If a public employer gives an employee a property interest in her employment, defining the relationship by statute or regulation, the disciplinary measures available to ensure loyalty are limited necessarily to enforcement in conformity with the agreed employment terms. The disciplinary measures available to enforce loyalty against an employee who has no property interest in her job obviously are much broader. Including persons within the *Elrod* exception for whom the public employer has deemed such disciplinary measures unnecessary does not promote the exception's purpose. Such an employer cannot meet *Branti*'s requirement that the employer demonstrate that the employee's political loyalty is necessary to effective job performance. *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294. The employer's employment policy instead conclusively demonstrates the opposite; the employer has found that the employee's functions do *not* require the loyalty implicated by *Elrod*. *See Newcomb v. Brennan*, 558 F.2d 825, 830 (7th Cir. 1977) (city's exemption of city attorney from civil service was "presumably" because it required his absolute loyalty). A corollary of *Elrod*, then, is that public employees given a property interest in their employment necessarily do not fall within *Elrod*'s exception to the rule against discipline because of political activity.

Two circuit court decisions applying *Elrod* lend strength to my disagreement with the majority's reading of the case law. Although both courts decided in favor of the defendant, their reasoning put government officials like Bergna on notice that they could not discipline subordinates who lacked policymaking power for political reasons. In looking only at the cases' results and not at how the courts reach those

results, the majority misunderstands the policy behind *Elrod* and misconceives the nature of the qualified immunity inquiry.

The more recent case, *Mummau v. Ranck*, 687 F.2d 9 (3d Cir.1982), held that an assistant district attorney qualified for the *Elrod* exception. The third circuit affirmed the district court relying on the type of analysis set out in *Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981). In holding that Mayor Marshall could dismiss the plaintiffs—a city solicitor, an assistant city solicitor, and a second assistant city solicitor— because of political party affiliation, the *Ness* court examined the solicitors' duties as defined in the city's administrative code. *Id.* at 521. They were appointed by and served at the pleasure of the mayor, *i.e.*, they had no property interest in their jobs. They advised and represented the city in its legal matters; they did not serve as prosecutors. These responsibilities involved the solicitors in policymaking and "broad administrative roles." *Id.* (quoting district court memorandum decision). Although the *Ness* court affirmed a summary judgment for the defendant government officials, the court noted that summary judgment is not appropriate where evidence exists that supports the employee's claim to a nonpolicymaking role, especially since the government bears the burden of proving a policymaking role. *Id.* at 522. *Mummau* relies on *Ness*'s case-by-case approach and on the district court's determination that "Pennsylvania statutory and case law relating to the obligations of Pennsylvania's district attorneys and their assistants" justified finding that the plaintiffs fit the policymaking description. *Id.* at 10. An assistant district attorney in Pennsylvania has duties consonant with the district attorney, which include "render[ing] legal advice implementing policy." *Mummau v. Ranck*, 531 F.Supp. 402, 404–05 (E.D.Pa. 1982).

The other case on which the majority relies differs from the case before us in crucial respects. *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir.1977). Newcomb, a deputy city attorney, decided to run for Congress. Brennan, who as the city attor-

ney was Newcomb's superior, told Newcomb that he would fire him if he did not withdraw from the race. When Newcomb persisted, Brennan followed through on his threat.

After finding that the first amendment protected Newcomb's "interest in seeking office," the court agreed with the district court's finding that Newcomb was a policymaker. Newcomb was exempt from civil service. *Id.* at 827. The city code and charter imposed upon deputy city attorneys all of the duties of the city attorney, "including conducting all the law business of the city, drafting ordinances, and supervising assistant city attorneys." *Id.* at 829. Newcomb was also in line to succeed the Mayor if a vacancy occurred. *Id.* The court concluded that these facts "clearly established that [Newcomb's] duties were of the 'broad scope' which the *Elrod* Court equated with a policymaking function." *Id.*

The court also held that the city's interest in being able to dismiss Newcomb outweighed Newcomb's first amendment rights. *Id.* at 830. The court described Newcomb's role as "highly discretionary." *Id.* Many of his decisions would implement the city attorney's policies, and some would actually create policy. The court concluded that these responsibilities required a deputy city attorney's absolute loyalty, surmising that "[i]t is presumably for this reason that the ... City Charter and City Code permit the city attorney unfettered discretion to select his deputy and exclude the position of deputy city attorney from the civil service tenure which lesser attorneys in the city attorney's office receive." *Id.*

The majority seeks to apply *Elrod*'s exception to prosecutors as a category and cites *Newcomb* in support. While focusing on *Newcomb*'s result, the majority totally ignores the *Newcomb* court's reasoning on the qualified immunity claim. Like the Third Circuit in *Mummau*, the *Newcomb* court did a functional analysis of the plaintiff's job responsibilities. It did not assume, as the majority does, that all persons with a particular broad job label, like "prosecutor," are excepted from the general rule

against discipline because of exercise of first amendment rights. The Seventh Circuit looked specifically at the city's code and charter to determine exactly what Newcomb's responsibilities were and whether they demonstrated that the city considered him a policymaker. Both *Ness* and *Newcomb* relied on the plaintiffs' exemption from civil service, and *Mummau* relied on the statute to define plaintiff's employment status. In other words, by distinguishing persons specifically given a property interest in their employment by statute or regulation, these cases strongly support the conclusion that a public employee such as Finkelstein is not a policymaker falling within the *Elrod* exception if his employer guarantees him a property interest in his job.

Finkelstein's employment status differs markedly from the plaintiffs' in *Ness*, *Newcomb*, and *Mummau*. Finkelstein has a property interest in his job guaranteed him by the county charter governing his employer, the county. Santa Clara County's Code and Charter prohibits discriminating against him on the basis of political opinion. California law also prohibited any effort on Bergna's part to restrain Finkelstein's candidacy. The plaintiffs in *Ness* and *Newcomb* did not have such a property interest, nor did Mummau.

On an even more elementary level, not even *Newcomb*'s result supports the majority's use of the case to the effect that existing case law excluded all prosecutors from property interests in their jobs. The majority states that *Newcomb* is particularly on point factually; it is not. In addition to Newcomb being exempt from civil service, he was *not* a prosecutor of any kind, assistant or otherwise. He served as the city's counsel, which did not include prosecutorial duties. There is a significant difference between the responsibilities of a city's counsel, representing and advancing the city's interests, and a prosecutor, an officer of the court charged with doing justice under the criminal law.

The majority concludes that a footnote in *Branti*, 445 U.S. at 519 n. 13, 100 S.Ct. at 1295 n. 13, demonstrates that the law re-

garding prosecutors was unsettled at the time of Finkelstein's suspension. *See supra* at 1453. *Branti* held that the county could not dismiss assistant public defenders on the basis of political party affiliation. The court stated that "[t]he primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy with the State." *Id.* at 507, 100 S.Ct. at 1289. In the footnote to this sentence, the Court noted, "This is in contrast to the broader public responsibilities of an official such as a prosecutor. We express no opinion as to whether the deputy of such an official could be dismissed on grounds of political party affiliation or loyalty." *Id.* n. 13.

Contrary to the inferences the majority draws from this footnote, the Court, although implying that *the* prosecutor "with broader public responsibilities" than public defenders might be in a different category from them, clearly separated out the *deputy* prosecutors as different from the chief prosecutor. Probably *no* inferences should be drawn from the footnote one way or another, certainly not those that the majority would draw. The footnote simply notes that the issue is *not* before the Court so it has no occasion to decide the issue—nothing in the opinion should be taken to reflect a specific position on the issue. It does nothing to settle *or* unsettle the law. Essentially, the only relevance of the Supreme Court's nondecision is that the chief prosecuting attorney *remains* subject to liability for violations of his assistants' first amendment rights under the case-by-case inquiry mandated by *Elrod* and applied in *Ness, Mummau,* and *Newcomb.*

Neither *Branti, Mummau,* nor *Newcomb* support the majority's understanding of the law. Finkelstein's status as a deputy prosecutor does not automatically give Bergna qualified immunity. The law was well settled on this point at the time of the suspension. Neither has Bergna justified the majority's grant of qualified immunity at the summary judgment stage on the facts. Bergna must present evidence that would lead us to conclude *as a matter of law* that Finkelstein was in a policymaking position in order for us to find that the district court erred in denying summary judgment. The majority's holding granting qualified immunity to Bergna on summary judgment is difficult to understand in the face of Finkelstein's evidence that he had a property interest in his job, which Bergna has conceded, and that he was not a policymaking employee. On the other hand, the record reveals that Bergna, who has the burden of proof, has offered *no* evidence to support the position that Finkelstein is a policymaker. In fact, he has conceded Finkelstein's factual allegation by agreeing that Finkelstein has a property interest in his employment.

Although the majority's grant of summary judgment to the party who has presented no evidence and against the party whose crucial factual allegation is conceded amazes me, I find even more inexplicable the majority's first amendment analysis in light of its due process analysis. In the majority's view, Finkelstein has a property interest in his job, so Bergna *cannot* deprive him of that interest by violating his due process rights. Bergna *can*, however, deprive him of his property interest by violating his first amendment rights. This makes no sense. If the county has seen fit to grant him that property interest, specifically prohibiting discipline because of his political activities, how can the majority justify a diametrically opposed finding that the county must consider his loyalty so important that it should be able to suspend Finkelstein for political activity, even if it violates Finkelstein's constitutional rights? Either he has a property interest in his job that entitles him to a hearing before suspension or he has no such property interest. The majority takes away in the first amendment analysis that which it has rendered in the due process analysis.

## CONCLUSION

The initial panel opinion was flawed in its reasoning in that it relied on *Connick,* a case that post-dated the events in this case, to support its holding that the law was well-established. However, pre-*Connick* law was well-established, although not as nicely packaged as in *Connick.* On the

facts of this case where the county charter and code spells out Finkelstein's role and his rights as deputy prosecutor, including his first amendment rights and property right in his job, the parties and the majority agree he has a property right in his job. The majority agrees that he is entitled to a hearing before suspension from his job and that the law was well settled on this point. On these facts, to grant qualified immunity to *Bergna* at the summary judgment stage on the first amendment claim is extraordinary, illogical, and wrong. I would affirm the district court.