**William FAZIO, Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF SAN FRANCISCO; Arlo Smith, Defendants–Appellees.**

**No. 96–16981.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 17, 1997.

Decided Oct. 7, 1997.

Nancy L. Fineman and Joseph W. Cotchett, Cotchett & Pitre, San Francisco, CA, for plaintiff-appellant.

Aleeta M. Van Runkle, Deputy City Attorney, and Jonathan Holtzman, Chief Deputy City Attorney, San Francisco, CA, for defendants-appellees.

Before: ALDISERT,[*] CHOY, and THOMPSON, Circuit Judges.

CHOY, Circuit Judge:

Plaintiff-appellant William Fazio ("Fazio") appeals the district court's partial grant of summary judgment in favor of defendants-appellees City and County of San Francisco ("CCSF") and Arlo Smith ("Smith") (collectively, "Appellees"). Fazio, a former Assistant District Attorney for CCSF, claims that the district court erred in holding that former CCSF District Attorney Smith's termination of Fazio's employment when Fazio decided to run against Smith in an upcoming election did not violate the First Amendment as a matter of law. We have jurisdiction under 28 U.S.C. § 1292(b), and we affirm the judgment of the district court.

### Factual and Procedural Background

Arlo Smith was the District Attorney of CCSF in 1995. When William Fazio, an Assistant District Attorney for San Francisco, filed his papers to run against Smith for the District Attorney position on April 13, 1995, Smith fired Fazio. At the time of his firing, Fazio had worked as a prosecutor in the San Francisco District Attorney's office for almost twenty years, had the title "Head Attorney," and worked in the Homicide Department. Fazio alleges, and Appellees concede for the purpose of this appeal, that Fazio was fired because he decided to run against Smith for the District Attorney position.

According to Fazio, the position of Head Attorney "does not have a single definition but instead may denote several things, such as an assistant district attorney's level of experience and skill, or the assistant district attorney's degree of supervisory capacity." Fazio states that he received the "Head Attorney" title due to his experience and skill as an Assistant District Attorney resulting from his lengthy service with the office. Fa-

zio claims that the job duties of a Head Attorney are no different than those of a regular Assistant District Attorney.

As a Head Attorney in the Homicide Division, Fazio handled high profile cases. Fazio was often quoted by the media on matters of general public interest, such as the O.J. Simpson trial, as well as on matters being handled by the District Attorney's office in which he worked. As Head Attorney, Fazio's salary was over $100,000 per year. The Appellees also point out that Fazio claims to have " 'innovated a program which closed down commercial property which was used for the sale of drugs' " and " 'helped create the Domestic Violence Unit in the District Attorney's Office.' "

According to the San Francisco Charter § 3.402, the position of Assistant District Attorney is an at-will position, and no cause is required for the firing of an Assistant District Attorney. Pursuant to the Charter, the District Attorney or his assistants "shall prosecute all criminal cases in the municipal and superior courts, draw all complaints, and issue warrants for the arrest of persons charged with crime who are to be prosecuted in such courts." *Id.*

Fazio's first amended complaint states five grounds for relief: 1) violation of First Amendment rights; 2) violation of Due Process rights; 3) wrongful termination in violation of public policy; 4) slander; and 5) intentional infliction of emotional distress. CCSF and Smith moved for summary judgment on all five causes of action. The district court granted in part and denied in part the motion for summary judgment. One of the issues on which summary judgment was granted was the alleged First Amendment violation. The district court certified the First Amendment claim for immediate appeal under 28 U.S.C. § 1292(b), and this court granted Fazio's motion for interlocutory appeal on October 23, 1996.

### Standard of Review

We review a grant of summary judgment de novo. *Jesinger v. Nevada Fed.*

---

[*] The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

*Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, any genuine issues of material fact exist, and whether the district court correctly applied the relevant substantive law. *Id.* The district court's grant of summary judgment may be affirmed if it is supported on any ground in the record, regardless of whether the district court relied upon that ground. *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 860–61 n. 17 (9th Cir.1995).

▮ In response to a properly supported motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The inquiry performed by the trial court is the determination of whether "any genuine factual issues [exist] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). For an issue to be "genuine," there must be evidence such that a verdict in favor of the nonmoving party could be reached by a reasonable jury. *Id.* at 248, 106 S.Ct. at 2510. Therefore, a mere "scintilla" of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some "significant probative evidence tending to support the complaint." *Id.* at 249, 252, 106 S.Ct. at 2510, 2512.

## Analysis

▮ When analyzing claims by government employees who are asserting that they were fired because they exercised their First Amendment rights, under the rule set forth in *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968) the trial court must "balance … the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[1] The Supreme Court later carved out an exception to this general rule. Under *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), a public official who is a "policymaker" may be fired for political reasons without offending the United States Constitution.

The Supreme Court subsequently refined its description of the inquiry to be used in determining whether *Elrod* applies to a given employee. In *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980), two Republican Assistant Public Defenders brought suit to enjoin the Democratic Public Defender from discharging them on the basis of their political affiliation. The Supreme Court stated that, in evaluating whether a position falls under the *Elrod* exception, the essential inquiry is "not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."[2] The *Branti* Court went on to hold that the position of assistant public defender is not the type of public office in which a particular party affiliation may be a job requirement, because public defenders represent individual defendants, rather than society as a whole. *Id.* at 519, 100 S.Ct. at 1295. Significantly, the *Branti* Court noted that the above holding was not necessarily applicable to District Attorneys: "This is in contrast to the broader responsibilities of an official such as a prosecutor. We express no opinion as to whether the deputy of such an official could be dismissed on the grounds of political party affiliation or loyalty." *Id.* at 519 n. 13, 100 S.Ct. at 1295 n. 13. The rationale utilized to permit

---

1. In performing this analysis, the court should inquire into such matters as whether the speech: (i) impairs discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs the routine operations of the office.

*Hyland v. Wonder,* 972 F.2d 1129, 1139 (9th Cir.1992).

2. Both *Elrod* and *Branti* are so-called "patronage" cases in which public employees were fired on the basis of their political affiliations, i.e., the employees belonged to the "wrong" political party, and their employment was terminated for that reason.

patronage dismissals in *Elrod* and *Branti* may also be applicable in the context of dismissals that are based on a public employee's political activities, such as running for office against an employer:

> If a public official is permitted to fire a confidential or policymaking employee merely because the latter quietly, inoffensively, undemonstratively belongs to the wrong political party ... the official should be permitted to fire the same employee when the latter asks the electorate to throw the rascal out and put himself into the rascal's office.

*Wilbur v. Mahan*, 3 F.3d 214, 218 (7th Cir. 1993).[3]

■ To summarize, a public employee's claim that he or she was fired for exercising his or her First Amendment speech rights would generally be analyzed using the *Pickering* balancing test. If, however, a public employee is a policymaker, then the claim would fall under the rubric of *Elrod* and *Branti*. Thus, the crux of the issue in the case at hand is whether Fazio's position was a policymaking one. Under the rationale in *Branti*, a public employee need not literally *make* policy in order to fit within the *Elrod* policymaker exception. Rather, an employer may fire a public employee for purely political reasons if the employer can demonstrate that political considerations are "appropriate requirement[s] for the effective performance" of the job. *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294; *see also Wilbur*, 3 F.3d at 218. If Fazio was not a policymaker, then his First Amendment claim would be evaluated using the *Pickering* balancing test. On the other hand, if Fazio was a policymaker, then under *Branti* his government employment could be terminated for purely political reasons without offending the First Amendment.

Fazio relies primarily on two cases to support his assertion that we should evaluate his claim under the *Pickering* balancing test rather than under the *Branti* exception. First, in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court applied the *Pickering* test to evaluate the First Amendment claim of an Assistant District Attorney whose employment was terminated because she distributed throughout the office a questionnaire concerning office policy and morale. Second, in *Finkelstein v. Bergna*, 924 F.2d 1449, 1453 (9th Cir.1991), we held that in 1982 it was not clearly established that prosecutors were protected by the First Amendment from politically motivated disciplinary action. In so doing, we noted that in *Connick*, "Myers' position as an assistant prosecutor was unimportant to the Court's straightforward application of the general rule prohibiting the discharge of public employees for exercising their first amendment rights." *Id.* at 1453.

Fazio argues that the fact that the Supreme Court did not use *Branti* but rather used *Pickering* to evaluate assistant prosecutor Myers' claim in *Connick* is a refutation of the proposition that all Assistant District Attorneys are policymakers as a matter of law. He contends that our statement in *Finkelstein* indicates that we should use such an approach in evaluating Fazio's claim.

Fazio, however, is reading too much into these cases. The Court in *Connick* focused on whether the topics of the questionnaire were matters of public concern. *Connick*, 461 U.S. at 143, 103 S.Ct. at 1687. The opinion contains no discussion whatsoever about whether Assistant District Attorneys are policymakers, or whether claims of Assistant District Attorneys arguing that they were discharged for exercising their First Amendment rights should be evaluated under the *Pickering* test or the *Elrod–Branti* exception. In other words, the Supreme Court in *Connick* did not visit the issue of whether an Assistant District Attorney is a policymaker, and that the case therefore should not stand for the premise that Assistant District Attorneys are unqualifiedly not policymakers.

As for our decision in *Finkelstein*, a key fact in that case differs from the case at hand. Finkelstein's position was a civil ser-

---

**3.** In *Wilbur,* deputy sheriff Wilbur announced his candidacy for the office of sheriff. The current sheriff was going to run for re-election to that position. Approximately one week after Wilbur's announcement, the sheriff placed Wilbur on un- paid leave until after the election. *Id.* at 215. The Seventh Circuit held that the sheriff's actions did not offend the First Amendment. *Id.* at 217–18.

vice position, while Fazio's position was an at-will position. As a civil service employee, Finkelstein had a property interest in his job as a deputy district attorney, unlike Fazio. The *Finkelstein* panel cited with apparent approval several out-of-circuit cases that held that at-will Assistant District Attorneys could be dismissed for political reasons without offending the First Amendment. The *Finkelstein* decision mentions the *Elrod* policymaking exception and the *Branti* footnote, and also cites to *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir.1977) (holding that the broad duties of an at-will deputy city attorney made Newcomb a policymaker for *Elrod* purposes) and *Mummau v. Ranck*, 687 F.2d 9 (3d Cir.1982) [discussed in more detail later in this opinion], stating that *Newcomb* and *Mummau* "turned largely on determinations that assistant prosecutors were policymaking officials, thus virtually at-will employees." *Id.*

Fazio contends that the district court erred in finding that the position of Head Attorney/Assistant District Attorney is a "policymaking" position. Fazio argues that, despite his status as Head Attorney, he was not a policymaker because his "responsibilities are no different from rank and file assistant district attorneys." Therefore, Fazio claims, the *Elrod–Branti* exception does not apply to him, and his cause of action should be evaluated under the *Pickering* balancing test.

 However, as we noted earlier, the term policymaker as used in this context does not mean 'one who makes policy.' Rather, the term refers to a position in which political considerations are "appropriate requirement[s] for the effective performance of the public office involved." *Branti*, 445 U.S. at 519, 100 S.Ct. at 1295. Indeed, "[a] public agency would be unmanageable if its head had to … retain his political enemies … in positions of confidence or positions in which they would be … exercising discretion in the implementation of policy." *Wilbur*, 3 F.3d at 217. Several of our sister circuits have addressed the question of whether the position of assistant district attorney (or a like position) is a policymaking position, and, after a careful consideration of the facts, answered the question in the affirmative.

In *Mummau v. Ranck*, 687 F.2d 9, 10 (3d Cir.1982) (per curiam), the Third Circuit af-

firmed a decision of the district court and held that an Assistant District Attorney fell squarely within the *Elrod–Branti* exception. In that case, Mummau claimed that he was not a policymaker because he only prosecuted juvenile cases and was not involved in the policymaking details of the office. *Mummau v. Ranck*, 531 F.Supp. 402, 404 (E.D.Pa. 1982). The district court noted that as an Assistant District Attorney, Mummau could, under Pennsylvania law, take over the duties of the District Attorney should the District Attorney become incapacitated. *Id.* at 404–05. The district court found that the powers statutorily granted to Assistant District Attorneys were very broad, regardless of whether or not the Assistant District Attorneys actually exercised those powers. *Id.* at 405. "So long as the applicable statutes, regulations and case law 'contemplate' that the public officer 'might' be relied upon to render legal advice implementing policy" the official may be fired for political reasons without offending the First Amendment. *Id.*

In *Livas v. Petka*, 711 F.2d 798, 800 (7th Cir.1983), the Seventh Circuit held that an assistant prosecutor was a policymaker and thus could be subject to termination under *Elrod*. The court observed that prosecutors do not have individuals as clients, but rather serve "society as a whole." *Id.* The court noted that, while generally the prosecutor will be responsible for creating policy, the assistant prosecutor implements the policies set forth by the prosecutor, and "may, in carrying out his or her duties, make some decisions that will actually create policy." *Id.* at 801. The court concluded that a prosecutor's loss of confidence "for whatever reason" in an assistant prosecutor is sufficient justification for the dismissal of that assistant prosecutor. *Id. See also Gordon v. County of Rockland*, 110 F.3d 886, 890–91 (2d Cir.1997) ("'All circuit court decisions-and almost all other court decisions-involving attorneys in government service, other than public defenders, have held that *Elrod/Branti* do not protect these positions.'") (quoting Susan Lorde Martin, *A Decade of Branti Decisions*, 39 Am. U.L.Rev. 11, 46–47 (1989)); *Williams v. City of River Rouge*, 909 F.2d 151, 155 (6th Cir.1990) ("[C]ourts that have decided whether city and county

attorneys are ... protected [under the First Amendment against politically-motivated dismissal] have almost uniformly found that they are not."); *Newcomb*, 558 F.2d 825 (7th Cir.1977) (holding that the broad duties and discretionary role of an at-will deputy city attorney made Newcomb a policymaker for *Elrod* purposes).

 In light of the above-cited authorities, we hold that Assistant District Attorney Fazio was a policymaker. While his powers under the San Francisco Charter are identical to those of a rank-and-file Assistant District Attorney, they are also nearly identical to those of the actual District Attorney.[4] It is true that the Supreme Court in *Connick* used the *Pickering* test; however, the Court did not address the issue of whether an Assistant District Attorney is a policymaker. Fazio does not point to a single case that directly states that Assistant District Attorneys are *not* policymakers nor has he referred us to any case in which a court has held that an at-will Assistant District Attorney is entitled to retain his or her job while running against his or her employer in an upcoming election. Moreover, Fazio was paid over $100,000 per year, commented to the media about CCSF cases and other cases of general public interest, and handled high profile cases with a great degree of autonomy.[5] A policymaking public employee has no First Amendment right to run for office against his or her superior without being subject to termination for that reason. Therefore, Smith's termination of Fazio's employment was not a violation of the First Amendment. Because we hold that Fazio's position with CCSF was a policymaking one, we do not address Fazio's claim that under

the *Pickering* balancing test his interest in free speech outweighs the Appellees' interest in running an efficient office. We also need not reach Smith's claim that he is entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[6]

### Conclusion

We hold that Fazio's job as an Assistant District Attorney was a policymaking position, and that under the *Elrod/Branti* exception Smith did not violate the First Amendment in terminating Fazio. Because Fazio was a policymaker, under the applicable law Smith could fire Fazio for a strictly political reason, namely, Fazio's candidacy against Smith in the upcoming election for the position of District Attorney. We therefore AFFIRM the district court's grant of summary judgment in favor of the Appellees.

---

4. The District Attorney must furnish a bond and appoint all assistants and employees in the office. The District Attorney may also requisition funds from the District Attorney's special fund in certain circumstances. However, the District Attorney *or his assistants* "shall prosecute all criminal cases in the municipal or superior courts, draw all complaints, and issue warrants for the arrest of persons charged with crime who are to be prosecuted in such courts." (emphasis added).

5. Some factors to be considered when determining whether a job is a policymaking position are: vague or broad responsibilities, relative pay, technical competence, power to control others, authority to speak in the name of policymak-

ers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders. *Hall v. Ford*, 856 F.2d 255, 262 (D.C.Cir.1988).

6. Government officials are entitled to immunity from civil suit when their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1363 (9th Cir.1994).