James D. THOMAS, Plaintiff–Appellant,

v.

John CARPENTER, Defendant-Appellee.

No. 88–6507.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1989.

Decided Aug. 9, 1989.

Before HUG, HALL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

We must consider in this case the right of a public employee to seek election to the position occupied by his supervisor, free from retaliatory action against him when he fails. Under the circumstances of this case, we hold that the public employee states a cause of action.

I

Appellant James D. Thomas, a Lieutenant for the County of Santa Barbara Sheriff's Department, appeals from the district court's dismissal of his second-amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Thomas's complaint alleges civil rights violations against the County of Santa Barbara and its sheriff, John Carpenter, and seeks both injunctive relief and compensatory and punitive damages under 42 U.S.C. § 1983 (1982). The district court dismissed the complaint with prejudice, concluding that Carpenter's alleged conduct as a matter of law did not violate Thomas's constitutional rights. We have jurisdiction of Thomas's timely appeal under 28 U.S.C. § 1291 (1982).

A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir.1986). We cannot uphold such a dismissal "unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party." *Id.*

The material allegations in Thomas's complaint are as follows. Thomas has been employed by the Santa Barbara Sheriff's Department since 1973. He attained the position of Lieutenant in 1982. A Lieutenant is defined by the department's policy and discipline manual as a "subexecutive" whose duty is to "carry out department policies and administer and supervise the work of various subdivisions." As a Lieutenant, Thomas is not responsible for developing departmental policy, and therefore he, like any other employee, can only recommend policy changes through the designated chain of command. During his tenure as Lieutenant, Thomas had attended over 100 departmental staff meetings in the absence of his Division Commander, attended departmental policy manual revision meetings in conjunction with other Lieutenants in the department, and participated as an evaluator in training exercises for the department's high risk entry team.

In 1986 Thomas challenged Carpenter, the incumbent sheriff, in the June election for that office. Thomas's campaign literature focused on Carpenter's commitment to the sheriff's department and challenged his competence in running an efficient law enforcement agency. Carpenter won the election, receiving 54% of the vote to Thomas's 46%. After the election, Carpenter banned Thomas from attending departmental staff meetings, from attending policy manual revision meetings, and from participating as an evaluator for the department's high risk entry team. Thomas is the only Lieutenant in the department singled out for exclusion, purportedly in retaliation of his campaign against Carpenter for the office of Sheriff. Carpenter asserts that he took these steps because of Thomas's disloyalty and untrustworthiness, but he has not formerly charged Thomas in any departmental disciplinary proceedings. Carpenter's conduct is alleged to have diminished Thomas's professional reputation so that he has lost promotional opportunities within the department and lateral opportunities with other law enforcement agencies in California. He seeks general damages, punitive damages, and injunctive relief.

## II

"'To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes.'" *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1313–14 (9th Cir.1989) (quoting *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987)). The district court concluded that Thomas's allegations failed to meet the second of these two elements. The district court reasoned that Thomas was not deprived of any protected right because he "was neither terminated nor demoted nor transferred," and he "had no given right to attend policymaking meetings."

Underlying this rationale is the notion that dismissal was proper because Thomas failed to allege a constitutionally protected property interest. But such allegations are unnecessary under the theory of Thomas's claim. Because "[s]tate action designed to retaliate against and chill political expression strikes at the heart of the First Amendment," *Gibson,* 781 F.2d at 1338, all that Thomas's complaint needs so as to avoid dismissal are allegations that Carpenter's conduct was motivated by an intent to retaliate for his exercise of constitutionally protected rights, *see Soranno's Gasco, Inc.,* at 1314 n. 3 ("The fact that he had no protected property interest in continued employment was not dispositive because his firing, if retaliatory, effectively deprived him of his constitutionally protected right to free speech."). It is therefore of no consequence that, as Thomas alleges, Carpenter chose to remove certain respon-

sibilities from his usual duty assignments instead of terminating, demoting, or transferring him. *See, Allen v. Scribner,* 812 F.2d 426, 434 n. 16 (9th Cir.1987) ("If Allen reasonably felt that office work was less desirable than field work, his reassignment might have had an impermissible chilling effect on his constitutionally protected speech," even if the tasks "were commensurate with his training and experience."), *modified,* 828 F.2d 1445 (9th Cir.1987); *cf. Elrod v. Burns,* 427 U.S. 347, 359 n. 13, 96 S.Ct. 2673, 2683 n. 13, 49 L.Ed.2d 547 (1976) (conduct used to discourage the exercise of first amendment freedoms "need not be particularly great in order to find that rights have been violated"; for example, "[r]ights are infringed both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason").

The crux of this case, then, rests on whether Thomas's complaint sufficiently alleges that Carpenter acted with an intention of retaliating against the exercise of constitutionally protected rights. Carpenter does not challenge Thomas's allegations that the "substantial" or "motivating" factor of his decisions banning him from certain duties was because of Thomas's candidacy for Sheriff. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–86, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977) (after plaintiff satisfies his burden of showing that the defendant's conduct was motivated by his exercise of a constitutional right, the burden shifts to the defendant to establish that the decision would have been no different even in the absence of the protected conduct). Instead, Carpenter contends that Thomas's campaign against him is not constitutionally protected.

Whether a public employee's conduct is constitutionally protected necessarily involves balancing " 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (quoting *Pick-*

*ering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). "The threshold question in applying this balancing test is whether [Thomas's] speech may be 'fairly characterized as constituting speech on a matter of public concern.' " *Id.* 107 S.Ct. at 2896–97 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)). This inquiry is "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* 107 S.Ct. at 2897 (quoting *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690).

There is no doubt that the allegations of Thomas's complaint, taken as true, satisfies this threshold inquiry. The content of Thomas's speech was to challenge Carpenter's commitment to the Sheriff's department and his competence in running an efficient law enforcement agency. *Cf. McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983) ("the competency of the police force is surely a matter of great public concern"). The form of the speech was literature disseminated widely throughout the County of Santa Barbara. And, of great significance, the statements occurred in the context of a political campaign. The content, form, and context of these statements clearly satisfy the threshold requirement even under the most exacting of views of what kinds of statements involve matters of public concern. *See Rankin,* 107 S.Ct. at 2902 (Scalia, J., dissenting) (speech on matters of public concern include "those matters dealing in some way with 'the essence of self government,' matters as to which 'free and open debate is vital to informed decisionmaking by the electorate,' and matters as to which ' "debate ... [must] be uninhibited, robust, and wide-open" ' " (citations omitted)).

Balanced against Thomas's interest in speaking on these matters of public concern is the public employer's interest "in promoting the efficiency of the public services it performs through its employees." *Id.* at 2898 (majority opinion). The focus of this part of the inquiry is on whether the protected conduct disrupts "the effective functioning of the public employer's enter-

prise." *Id.* at 2899. Factors to consider are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* Where, as here, the challenged speech deals more directly with issues of public concern, the public employer is "required to make an even 'stronger showing' of disruption." *McKinley,* 705 F.2d at 1115.

"Exactly what that 'stronger showing' entails is unclear," *Allen,* 812 F.2d at 432, and even varies depending on the context of the situation. "[A] police department," for example, "ordinarily will not be governed by the same standard as a school district" because of the " 'differences between the public interest in education and the public interest in safety.' " *Id.* (quoting in part *Byrd v. Gain,* 558 F.2d 553, 554 (9th Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). Carpenter argues that these safety concerns tip the balance in his favor and therefore Thomas's conduct was not constitutionally protected. "Yet even in a police department, the complained-of disruption must be 'real, [and] not imagined.' " *Id.* (quoting *McKinley,* 705 F.2d at 1115). Here, the clear import of Thomas's allegations is that his campaign against Carpenter did not impede his ability to perform his job or interfere with the safety responsibilities of the department. Simply stated, then, Carpenter cannot use the disruption exception " 'as a pretext for stifling legitimate speech or penalizing [Thomas's expression of] unpopular views.' " *Id.* (quoting *McKinley,* 705 F.2d at 1115).

Carpenter also relies on the political affiliation cases of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), to argue that he could justifiably exclude Thomas from any policymaking role on the department solely on account of Thomas's being his political adversary. *See also Soderbeck*

*v. Burnett County,* 752 F.2d 285, 288 (7th Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). *Elrod* and *Branti* are not directly on point because they address political patronage dismissals based upon party loyalty. The election between Thomas and Carpenter, however, was nonpartisan. Nonetheless, "[t]he *Elrod–Branti* line is premised upon concerns similar to those animating the employee speech cases." *Hall v. Ford,* 856 F.2d 255, 262 (D.C.Cir.1988). Accordingly, "the government interest recognized in the affiliation cases is also relevant in the employee speech cases." *Id.* at 263. The interest advanced by Carpenter's argument is the "need for political loyalty of employees, not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687. This interest is not furthered, however, by the discharge of nonpolicymaking individuals who "have only limited responsibility and are therefore not in a position to thwart the goals of the in-party." *Id.*

It simply cannot be decided on the basis of Thomas's complaint that he would be in a position to thwart the goals of the in-party. As noted in *Elrod,*

No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well-defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

*Id.* at 367–68, 96 S.Ct. at 2686–87. Even this formula is not all encompassing. "[T]he ultimate inquiry," the Court announced later in *Branti*, "is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295.

Carpenter cannot show, based solely on the allegations of Thomas's complaint, that Thomas's political loyalty is essential to the effective performance of the tasks removed from his list of responsibilities. Thomas alleges that the weekly staff meetings are informational only and do not involve the formulation of departmental policy. Also, it seems patent that the role of evaluator of the department's high risk entry team has no significant relationship to one's political loyalty. The effect of Thomas's participation in policy manual revision meetings is much less clear. Carpenter may be able to prove at trial, or perhaps even by summary judgment, that Thomas's political loyalty in each of these positions is needed for the effective implementation of general departmental policy. *Compare Roth v. Veteran's Admin. of Government of U.S.*, 856 F.2d 1401, 1408 (9th Cir.1988) (requiring trial on government's defense that employee's speech disrupted the office) *with Balogh v. Charron*, 855 F.2d 356, 357 (9th Cir.1988) (affirming summary judgment based upon bailiff's status as a confidential employee). At the pleading stage, however, Carpenter cannot satisfy this burden. *Cf. Soderbeck*, 752 F.2d at 288 (whether employee could be fired based on political affiliation "was sufficiently uncertain to be one for the jury to decide").

### III

Because Thomas's complaint states a claim under section 1983, we reverse the district court and remand for additional proceedings. Thomas is entitled to costs of this appeal. However, a claim for attorneys' fees is premature and must await the ultimate determination of the prevailing party. *See Hanrahan v. Hampton*, 446 U.S. 754, 756, 100 S.Ct. 1987, 1988, 64 L.Ed.2d 670 (1980).

REVERSED AND REMANDED.