Reverend Eugene LUMPKIN
Jr., Plaintiff–Appellant,

v.

Willie L. BROWN, Jr., Mayor of the City and County of San Francisco,* and City and County of San Francisco, Defendants–Appellees.

No. 95–15006.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1996.

Decided April 3, 1997.

* Willie L. Brown is Substituted for his Predecessor, Frank Jordan, as Mayor of the City and County of San Francisco. F.R.A.P. 43(C)(1).

James D. Struck, The Rutherford Institute, Modesto, California, for plaintiff-appellant.

Dennis Aftergut, Deputy City Attorney, San Francisco, California, for defendants-appellees.

Before: NORRIS and WIGGINS, Circuit Judges, and McKIBBEN, ** District Judge.

WILLIAM A. NORRIS, Circuit Judge.

In 1993, the City of San Francisco removed Reverend Eugene Lumpkin from his position as a member of the San Francisco Human Rights Commission because of public statements he made condemning homosexuality. The statements cited by the City in removing Reverend Lumpkin included the following:

* "[T]he homosexual lifestyle is an abomination against God. So I have to preach that homosexuality is a sin." CR 29, exh. B.

* "I believe everything the Bible sayeth," which includes belief in the proscription in Leviticus that a man who sleeps with a man should be put to death. CR 29, exh. E.[1]

In removing Reverend Lumpkin from office, then-Mayor Frank Jordan stated:

> Reverend Lumpkin chose to make his beliefs a part of the political process, and in so doing crossed the line from belief to behavior to advocacy. Reverend Lumpkin, by failing to disassociate himself from specific biblical passages which may appear to justify stoning persons or groups of people, implied that he condoned physical harm.
>
> ... [N]o person will be allowed to serve in my administration whose actions may be interpreted by some to encourage violence or give support to others who seek to justify their hatred.

CR 29, exh. H.

Mayor Jordan's action was backed by the San Francisco Board of Supervisors, which resolved that:

> Interviewer: Do you believe that?
> Lumpkin: That's what God sayeth.
> Interviewer: Do you believe that?
> Lumpkin: That's—I said that's what the Book sayeth.
> Interviewer: Do you believe that?
> Lumpkin: Now, first of all, you have to understand the setting. God was at Mt. Sinai with the nation of Israel, who had just come out of bondage 430 years, and God was setting, giving the law on how he wanted them to conduct themselves in the new setting. And he says, "Now, I don't want you acting as the way they did in Egypt where we came from," and He gave these laws, and said, this is a holy people following a holy God in fellowship, "these are the things you need to refrain from."

CR 29, exh. E, at 4–6.

---

** Honorable Howard D. McKibben, District Judge from the District of Nevada, sitting by designation.

1. Following his first public statement condemning homosexuality as a sin, Reverend Lumpkin was interviewed on a San Francisco television news program, *Mornings on 2*. The following exchange occurred:

> Interviewer: Do you believe homosexuality is an abomination?
> Lumpkin: I believe—
> Interviewer: Do you believe it?
> Lumpkin: Sure. That—the Bible say [sic] it is.
> Interviewer: Do you believe?
> Lumpkin: Sure, I believe. I believe everything the Bible sayeth. All I can understand (inaudible).
> Interviewer: Leviticus also says that a man who sleeps with a man should be put to death. Do you believe that?
> Lumpkin: That's what it sayeth.

Eugene Lumpkin has, by his words and demeanor undermined the role and responsibilities of the Human Rights Commission and his statements and actions have resulted in a lack of confidence in the Commission's ability to perform its duties as expressed by a wide range of San Francisco residents and organizations. . . .

CR 23, Exh. C at 2.

Reverend Lumpkin sued the Mayor and the City, claiming that his removal from the Human Rights Commission violated his rights under the First Amendment and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–1. The district court granted defendants summary judgment on the ground that the City's action was fully justified because Reverend Lumpkin's public statements were inconsistent with his "broad responsibilities for formulating, implementing and explaining [the] policy" of the Human Rights Commission, Order at 9, 14, and because his dismissal did not constitute governmental establishment of religion. Order at 17.

■ We agree with the district court that neither the First Amendment nor the Religious Freedom Restoration Act requires San Francisco to tolerate members of its Human Rights Commission who make public statements that are antithetical to the Commission's official charge "to eliminate prejudice and discrimination because of race, religion, color, ancestry, age, sex, sexual orientation, disability, or place of birth . . . and to officially encourage private persons and groups to promote and provide equal opportunity for and good will toward all people." San Francisco Admin. Code § 12A.2. Reverend Lumpkin's statements explicitly condemning homosexuality as a sin and implicitly endorsing violence against homosexuals are not simply hostile to the Commission's charge, they are at war with it. Neither the First Amendment nor the Religious Freedom Restoration Act requires government at any level to put up with policy-level officials who work at cross-purposes with the policies they are responsible for carrying out.

To be sure, when Reverend Lumpkin speaks as a private citizen, he has every right to preach that homosexuality is a sin and that Leviticus says that "a man who sleeps with a man should be put to death." CR 29, exh. E, at 5. But the First Amendment does not assure him job security when he preaches homophobia while serving as a City official charged with the responsibility of "eliminat[ing] prejudice and discrimination." When he took his oath of office, he entered into a covenant with the people of San Francisco that he would work to further the policies he was empowered to carry out. He accepted a position of public trust which obligated him to foster tolerance, not intolerance. Predictably, the people of San Francisco reacted with a sense of outrage to his public statements. CR 26, at 3. As Reverend Lumpkin himself put it, "Mayor Jordan has been besieged with demands that he fire me from the City's Human Rights Commission." CR 23, exh. A., at 1.

The First Amendment strictly protects freedom of expression. Nonetheless, when the government acts as an employer, it has certain latitude to protect its operations and policies from being subverted by its own personnel. *See Waters v. Churchill*, 511 U.S. 661, 675–77, 114 S.Ct. 1878, 1888, 128 L.Ed.2d 686 (1994) (plurality opinion) ("The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as a sovereign to a significant one when it acts as an employer."). That is not to say that Reverend Lumpkin left his First Amendment rights at the door of City Hall when he took office as a Human Rights Commissioner. It is to say, however, that his First Amendment rights may be trumped by important interests of the City he agreed to serve.

■ In resolving conflicts between the First Amendment rights of public officials and the interests of government, courts engage in a balancing test. *See Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)

("the interests of the [employee], as a citizen, in commenting upon matters of public concern" are weighed against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"); *Tucker v. State of California Dep't of Education,* 97 F.3d 1204, 1210 (9th Cir.1996) (applying *Pickering* balancing test in reviewing First Amendment challenge to restrictions on a public employee's expression of his religious views); *Brown v. Polk County,* 61 F.3d 650, 658 (8th Cir.1995) (en banc) ("[*Pickering* ] dealt with free speech rather than the free exercise of religion, but because the analogy is such a close one, and because we see no essential relevant differences between those rights, we shall endeavor to apply the principles of *Pickering* to the case at hand."). When we apply *Pickering* and weigh the City's interest in eliminating prejudice and discrimination against Reverend Lumpkin's First Amendment interest in condemning homosexuality as a sin while serving as a voting member of the Human Rights Commission, the conclusion is inescapable that the City's interests prevail. As a private citizen, Reverend Lumpkin is perfectly free to preach vigorously and robustly that homosexuality is a sin. But he did not enjoy that same unrestrained freedom while he occupied the important and prestigious office of a Human Rights Commissioner.

■ Because the Human Rights Commission, as the District Court put it, "formulat[es], implement[s] and explain[s]" the City's antidiscrimination policies, Order at 9, the City has not only a legitimate, but a heightened expectation that its Human Rights Commissioners refrain from speaking publicly in a way that mocks the City's antidiscrimination policy. *Compare Rankin v. McPherson,* 483 U.S. 378, 390, 107 S.Ct. 2891, 2900, 97 L.Ed.2d 315 (1987) ("The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails.") *with Thomas v. Carpenter,* 881 F.2d 828, 831 (9th Cir.1989) (governmental interest is not furthered by discharge of nonpolicymaking employees who are not in positions to thwart governmental goals). Government employees who occupy policymaking positions may even be removed solely on the basis of political affiliation, whether or not the employees make public statements, because of "the need for political loyalty of employees, not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration. . . ." *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1978).

The very fact that Reverend Lumpkin was a Human Rights Commissioner made it predictable that his public condemnation of homosexuality would be much more newsworthy than if he had been speaking solely as a private citizen. So it is not surprising that he attracted the attention of the media and, in turn, ignited a public outcry. Applying the *Pickering* balancing test, we hold that the City's interest in having commissioners who work to promote City policies far outweighs any commissioner's First Amendment interest in publicly expressing views that subvert those policies.

The Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb–1, does *not mandate a different result.* According to RFRA, "[g]overnment shall not substantially burden a person's exercise of religion" unless the burden is "(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb–1(a),(b). The City's removal of Reverend Lumpkin from its Human Rights Commission served a compelling governmental interest—the preservation of the integrity of its antidiscrimination policies. It was also the only effective way to remedy the damage his statements as a Commissioner wreaked on the credibility of those policies. Accordingly, we reject Reverend Lumpkin's RFRA claim.

■ We turn finally to Reverend Lumpkin's claim that his removal from the Human

Rights Commission violated the Establishment Clause by endorsing a particular religious faith that interprets scripture "less literal[ly]" than does Reverend Lumpkin's. Appellant's Opening Br. at 30. Reverend Lumpkin's only argument is that the City promoted a religious faith that is antithetical to Reverend Lumpkin's. But Mayor Jordan's press releases consistently acknowledged Reverend Lumpkin's right to adhere to his religious faiths and stressed the secular reasons for Reverend Lumpkin's removal. When the Mayor announced Reverend Lumpkin's removal from the Human Rights Commission, he stated that "I have not in the past, nor will I in the future ask that a religious litmus test of beliefs be a part of the appointment process for any San Francisco Commission." CR 29, Exh. F. The Mayor went on to say that "when [religious] beliefs are volunteered in a way that negatively influences the operation of a state function, or suggests a justification for actions which may lead to violence, I believe it crosses the line between church and state." *Id.* Because these statements adhere to secular principles, they defeat Reverend Lumpkin's claim that his removal from the Human Rights Commission had the impermissible primary effect of promoting any particular religious faith. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1398–99 (9th Cir.1994) ("Notwithstanding the fact that one may infer possible city disapproval of Vernon's religious beliefs from the direction of the investigation, this cannot objectively be construed as the primary focus or effect of the investigation."). We therefore reject Reverend Lumpkin's Establishment Clause claim.

## Conclusion

We AFFIRM the summary judgment in favor of defendants. Accordingly, we deny Reverend Lumpkin's request for attorney's fees because he is not here a prevailing party. 42 U.S.C. § 1988.